[No. B063723. Second Dist., Div. Six. Dec. 2, 1992.]

OSCAR LOWENSCHUSS et al., Plaintiffs and Appellants, v.
SOUTHERN CALIFORNIA GAS COMPANY, Defendant and Respondent.

**COUNSEL**

Gary R. Colegrove for Plaintiffs and Appellants.

John R. Ellis for Defendant and Respondent.

**OPINION**

**GILBERT, J.**—The gas company, a public utility, knows that a rapidly spreading fire is approaching a neighborhood. Does it have a duty to purge gas from its pipes and house meters which may be in the path of the fire? No.

Oscar, Susan and Leonard Lowenschuss (Lowenschusses) appeal from the judgment in favor of respondent, Southern California Gas Company (Company), after the trial court sustained the Company's demurrer to the Lowenschusses' first amended complaint without leave to amend. We affirm.

### FACTS

In their first amended complaint, the Lowenschusses allege that, although the Company knew that a rapidly spreading fire, called the "Painted Cave Fire," was approaching their neighborhood, it refused to purge gas from its

lines and house meters because of the expense and trouble such action would entail.[1]

They allege that as a proximate result of the Company's negligent failure to shut off the gas to its lines, mains and meters, gas from the meter at their house "exploded, and caused a fire that destroyed [their] house." They seek damages for the destruction of their house, for medical and other related expenses incurred.

The trial court sustained Company's demurrer to this complaint without leave to amend and entered judgment accordingly.

## DISCUSSION

In this case of first impression, we must decide whether a public utility gas company has a duty to consumers to shut off the flow of gas when it is aware that a neighborhood of homes may be in the path of a large fire.

The parties have not cited any cases directly on point and we have found none. We are persuaded, however, that the reasoning and the rule pronounced by our Supreme Court in the case of *Niehaus Bros. Co.* v. *Contra Costa Etc. Co.* (1911) 159 Cal. 305, 318-319 [113 P. 375], is dispositive.

In *Niehaus*, plaintiff alleged that because defendant breached its contract to supply water for fire protection, its mill was destroyed by fire. Plaintiff did not allege that defendant was negligent. The court held, inter alia, that in the absence of a contractual relationship to supply water for fire protection, plaintiff could not recover from a public utility water company for damages due to fire. (*Niehaus Bros. Co.* v. *Contra Costa Etc. Co.*, supra, 159 Cal. at pp. 317-319.)

The court considered whether defendant, as a public water company, owed any such duty to a plaintiff consumer upon collection of ordinance rates for water and hydrants as established by the town of Berkeley. (*Niehaus Bros. Co.* v. *Contra Costa Etc. Co.*, supra, 159 Cal. at pp. 311-312.) The court noted that any right of recovery necessarily "must be supported by contract because there is nothing in the constitutional provisions of this state impressing the distribution of appropriated water . . . or in the legislation thereunder, [citation], which imposes upon a water company any obligation to furnish to the municipality, or its inhabitants, any specified quantity of water,

---

[1]The trial court had earlier sustained Company's demurrer to the Lowenschusses' initial complaint without leave to amend as to all causes of action except negligence. The Lowenschusses appeal only from the final judgment on the first amended complaint for negligence.

or water for any particular purpose. Hence, no action in tort for failure to have a supply of water at the premises of a consumer in a city . . . for the extinguishment of fire . . . is given under any statute or rule of law in this state . . . . [Citation.]" (*Id.*, at pp. 312-313; see *Ukiah* v. *Ukiah Water and Imp. Co.* (1904) 142 Cal. 173 [75 P. 773], cited in *Niehaus, supra,* which holds there is no liability for destruction by fire of municipal property under general contract to furnish water to public hydrants at ordinance rates for general fire purposes; that a water company does not assume any obligation to extinguish a fire when it undertakes to supply water to a consumer for general purposes.)

Such an obligation may exist where, in addition to the ordinary duty of supplying water for general use, the company by express contract assumes the additional obligation of furnishing water in sufficient quantity to protect specific property from fire. (*Niehaus Bros. Co.* v. *Contra Costa Etc. Co., supra,* 159 Cal. at pp. 314-315, discussing *Ukiah* v. *Ukiah Water and Imp. Co., supra,* 142 Cal. 173.)

"When we take into consideration the *status* of water companies in this state, the nature of the business in which they are engaged, the constitutional control which the state, through its municipalities takes in fixing the rates which may be charged for water, and the law imposed duties which the companies must discharge to their customers, no liability such as plaintiff claims was ever contemplated where the only relation shown is such as proceeds from the fact that the water company has undertaken to furnish the inhabitants of a municipality with water, has connected its mains with the premises of a consumer, and is charging ordinance rates for the water supplied or to be supplied." (*Niehaus Bros. Co.* v. *Contra Costa Etc. Co., supra,* 159 Cal. at p. 316.)

"While it is to be presumed that the rates established by a municipal ordinance are fair and reasonable, this presumption only applies as far as such rates fix the compensation to be paid the company for furnishing water to consumers as a commodity. They are not fixed as a consideration under which the company obligates itself to furnish water for the extinguishment of fires with a corresponding liability for failure to do so." (*Niehaus Bros. Co.* v. *Contra Costa Etc. Co., supra,* 159 Cal. at p. 317.)

1 Farnham on Water and Water Rights at pages 848-851 makes the pithy statement, " '. . . the contract of the water company is to furnish water and not to extinguish the fire . . . .' " (*Niehaus Bros. Co.* v. *Contra Costa Etc. Co., supra,* 159 Cal. at p. 318.) " '. . . Damages must be such as were in the contemplation of the parties; and it certainly cannot be claimed that for the

meager remuneration received a water company undertakes to make good the loss which would result from the destruction of a modern city by fire. And the principle applies equally to the destruction of any part of it. . . .' " (*Ibid.*)

If the Lowenschusses were correct, "then in all these instances a public [gas] company is assuming liability practically as an insurer of millions of dollars worth of property upon which, either from the nature of the business conducted on the premises or the locality in which the property is situated, an insurance company itself would not think of assuming the risk." (*Niehaus Bros. Co.* v. *Contra Costa Etc. Co., supra,* 159 Cal. at p. 321.) Such a company may be held responsible for the risk of liability in damages for loss suffered by fire only where it enters into an express contract with the consumer for such specific risks. (*Id.,* at pp. 322-323; and see *Gelhaus* v. *Nevada Irrigation Dist.* (1955) 43 Cal.2d 779, 782 [278 P.2d 689]; *Stuart* v. *Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802, 806, 809 [110 Cal.Rptr. 543]; *Luis* v. *Orcutt Town Water Co.* (1962) 204 Cal.App.2d 433, 437-440 [22 Cal.Rptr. 389]; *Lainer Investments* v. *Department of Water & Power* (1985) 170 Cal.App.3d 1, 9-15 [215 Cal.Rptr. 812]; see also Annot. (1925) 38 A.L.R. 505-509, 515, 526-528, §§ 24, 25, 27; Prosser & Keeton, Torts (5th ed. 1984) § 93, p. 671.)

In *H. R. Moch Co.* v. *Rensselaer Water Co.* (1928) 247 N.Y. 160 [159 N.E. 896, 62 A.L.R. 1199], Justice Cardozo similarly explained that "[n]o legal duty rests upon a city to supply its inhabitants with protection against fire [through the water company]." (P. 897.) Duty attaches only if the contract for such service is not merely generalized to all members of the public but is so "primary and immediate" and "to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual . . . ." (*Ibid.*)

Justice Cardozo pointed out that "[t]he field of obligation would be expanded beyond reasonable limits if less than this were to be demanded as a condition of liability." (*H. R. Moch Co.* v. *Rensselaer Water Co., supra,* 159 N.E. at p. 897.) "An intention to assume an obligation of indefinite extension to every member of the public is seen to be the more improbable when we recall the crushing burden that the obligation would impose. [Citation.]" (*Id.,* at pp. 897-898.) " 'The law does not spread its protection so far.' " (*Id.,* at p. 897, citing *Robins Dry Dock & Repair Co.* v. *Flint* (1927) 275 U.S. 303 [72 L.Ed. 290, 48 S.Ct. 134].)

■ We differentiate this case from one in which a utility company has been notified of a *specific defect or damage* involving one of its lines.

"Where the company knows the customer's line is defective—has leaks—it must take precautions *according to [those] circumstances.* [Citations.]" (*Ambriz* v. *Petrolane Ltd.* (1957) 49 Cal.2d 470, 478-479, 480 [319 P.2d 1], italics added [death from gas explosion and fire after company failed to inspect cabin outlets for leakage before filling butane gas tank at first delivery of season where company knew of valve leaks in some of cabins it serviced on the site]; see also *Farrell* v. *New Jersey Power & Light Co.* (1933) 111 N.J.L. 526 [170 A. 25, 29] [gas company held responsible where it had "both direct and constructive notice of leakage of gas from its main into the manhole in question . . . ."]; *Gerdes* v. *Pacific Gas & Electric Co.* (1933) 219 Cal. 459 [27 P.2d 365] [upholding jury verdict against gas company for failing to timely respond to numerous calls regarding broken water lines which caused pavement to cave in and damage a particular gas service pipe thereby leaking gas into single house].)

■ In *Ray* v. *Pacific Gas & Electric Co.* (1934) 3 Cal.App.2d 329, 337-339 [39 P.2d 812], the gas company's liability was limited. The gas company offered to go to all homes it serviced in San Francisco to adjust gas appliances for new use of natural gas. Did this offer extend to damage occurring after a service call two weeks later to establish a single new service? The appellate court held the offer to adjust appliances was limited to existing customers; a later service call to turn on a gas meter did not require a thorough search of the premises to discover all appliances needing adjustment per the previous announcement.

The "big bang" theory which suggests that the universe is ever expanding is not applicable to the liability of the gas company.

The judgment is affirmed. Each side to bear its own costs.

Stone (S. J.), P. J., and Yegan, J., concurred.