[No. B073248. Second Dist., Div. Five. May 31, 1994.]

ROBERT A. WHITE, a Minor, etc., Plaintiff and Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and Respondent.

## COUNSEL

Swanson & Gieser and Robert G. Williamson, Jr., for Plaintiff and Appellant.

Trecartin, Hines, Redd, Gonzales & Garmon, James A. Trecartin, Donald A. Redd, Michael Gonzales, Verna Garmon and Kingsley Hines for Defendant and Respondent.

## OPINION

**GRIGNON, Acting P. J.**—Plaintiff and appellant Robert A. White appeals from a summary judgment in favor of defendant and respondent Southern California Edison Company (SCE).[1] Plaintiff was injured in a motor vehicle collision which occurred at night in an intersection near an inoperative streetlight owned and maintained by SCE. We conclude SCE owed no duty to plaintiff to maintain the streetlight and affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

*Allegations of the Complaint*

At approximately 8:40 p.m. on February 20, 1987, plaintiff was driving a moped westbound on Torrance Boulevard through the intersection of Torrance Boulevard and Main Street in the City of Carson. At the same time, Dennis MacLean was driving a van eastbound on Torrance Boulevard. At the intersection of Torrance Boulevard and Main Street, Maclean turned left in front of plaintiff and the two vehicles collided. As a result of the collision, plaintiff sustained severe personal injuries.

---

[1] The action was filed by Johnnie W. White, as guardian ad litem for Robert A. White, a minor. For simplicity, we address Robert A. White as plaintiff. After amendments, the complaint named numerous defendants. SCE is the only defendant appearing on appeal.

The intersection in which the collision occurred was in a dangerous condition because all the streetlights were not functioning adequately and did not sufficiently illuminate the intersection. As a result of the poor lighting, the ability of a vehicle entering the intersection to observe a vehicle in the intersection was diminished. The collision was proximately caused by the inadequate lighting. SCE was employed as an independent contractor by a public entity to maintain and repair the streetlights at the intersection in which the collision occurred. SCE was negligent in the maintenance and repair of the streetlights at the intersection.

*Motion for Summary Judgment*

SCE moved for summary judgment. The evidence in support of the motion indicated one streetlight on Torrance Boulevard approximately 132 feet east of the intersection of Torrance Boulevard and Main Street was inoperative at the time of the collision. The streetlight was owned and maintained by SCE pursuant to a master lighting agreement with the County of Los Angeles. SCE had received no report that the streetlight was inoperative prior to the collision.

SCE argued that it owed no contractual or common law duty as an electric utility to the motoring public to maintain the streetlight. SCE also argued that since the County of Los Angeles owed no duty to plaintiff to light the streets, SCE also owed no duty to plaintiff to maintain the lights.

*Opposition to the Motion*

Plaintiff opposed the motion. The evidence submitted in opposition indicated the single inoperable streetlight was located 132 feet east and 15 feet north of the intersection.[2] It had been inoperable for at least several weeks before the collision. This streetlight was quite often inoperable and usually remained inoperable for a week to several weeks at a time.

*The Judgment*

The trial court found that SCE owed no duty to plaintiff to maintain the streetlight in an operable condition and granted the motion for summary judgment. A judgment was entered in favor of SCE from which plaintiff appeals.

---

[2]Although the complaint alleged all the streetlights were not functioning adequately, in the evidence presented in connection with the summary judgment motion, both parties agreed only a single streetlight was inoperable.

## DISCUSSION

The only issue presented in this case is whether SCE owed a duty to plaintiff to maintain the streetlight in an operable condition. The precise issue to be decided is: Does an electric utility company owe a duty to motorists injured in motor vehicle collisions caused in part by an inoperative streetlight which the utility has contracted to maintain? ■ Plaintiff contends SCE owes a duty under Civil Code section 1714, subdivision (a) to manage its property with ordinary care. Plaintiff argues no special exception exists for public utilities. Plaintiff also contends SCE owes a duty to maintain the streetlight under Public Utilities Code section 2106 and Streets and Highways Code sections 27, 941 and 1806.

■ "An action in negligence requires a showing that the defendant owed the plaintiff a legal duty . . . ." (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].) "Whether a 'duty' exists in a particular case is a question of law. 'Duty' is merely a conclusory expression used when the sum total of policy considerations lead a court to say that the particular plaintiff is entitled to protection." (*Krongos* v. *Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 392-393 [9 Cal.Rptr.2d 124].) Duty is an allocation of risk determined by balancing the foreseeability of harm, in light of all of the circumstances, against the burden to be imposed. (*Ann M.* v. *Pacific Plaza Shopping Center*, *supra*, at pp. 678-679.) In determining the existence of duty, ". . . the major [considerations] are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

■ A public utility has a general duty to exercise reasonable care in the management of its personal and real property. (Civ. Code, § 1714; *Langley* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 655, 660-661 [262 P.2d 846].) A public utility may be liable to those persons injured as a result of its breach of this duty. (*Ibid.*) The following are examples of situations in which a public utility may be liable to injured persons. A public utility, which negligently places a power pole too close to the road, may be liable to the

occupants of a motor vehicle injured when their vehicle collides with the pole. (*Gerberich* v. *Southern Calif. Edison Co.* (1935) 5 Cal.2d 46 [53 P.2d 948]; *George* v. *City of Los Angeles* (1938) 11 Cal.2d 303 [79 P.2d 723]; *Norton* v. *City of Pomona* (1935) 5 Cal.2d 54 [53 P.2d 952].) A public utility may also be liable to the heirs of a deceased construction worker electrocuted when a power pole, allowed to deteriorate to the breaking point, causes high voltage wires to come into contact with telephone wires. (*Jackson* v. *Utica Light & Power Co.* (1944) 64 Cal.App.2d 885 [149 P.2d 748].) In addition, a public utility may be liable to the heirs of a deceased individual electrocuted while attempting to unscrew a lightbulb of a streetlight, which shone in his bedroom disturbing his sleep; the utility knew the deceased had been unscrewing the lightbulb and failed to take reasonable precautions. (*Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170 [101 Cal.Rptr. 908, 496 P.2d 1276].) Moreover, a public utility may be liable to an individual injured by a falling light standard. (Cf. *Erde* v. *City of Los Angeles* (1953) 116 Cal.App.2d 565 [254 P.2d 110].) Further, a public utility may be liable to a plaintiff for failing to use due care in the installation of electric transformation facilities, where the plaintiff suffers injuries from electric shock while working near the facilities. (*Monroe* v. *San Joaquin L. & P. Corp.* (1941) 42 Cal.App.2d 641 [109 P.2d 720].) Finally, an electric utility company owes a duty of care to anyone who may come into contact with its high power lines. (*Krongos* v. *Pacific Gas & Electric Co.*, supra, 7 Cal.App.4th at pp. 395-396; *Perrine* v. *Pacific Gas & Elec. Co.* (1960) 186 Cal.App.2d 442, 448-449 [9 Cal.Rptr. 45]; *Pascoe* v. *Southern Cal. Edison Co.* (1951) 102 Cal.App.2d 254, 257 [227 P.2d 555]; *Lozano* v. *Pacific Gas & Elec. Co.* (1945) 70 Cal.App.2d 415, 420, 424 [161 P.2d 74]; *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 232 [282 P.2d 69].)

An exception to the general duty rule applicable to a public utility exists, however, in the case of an interruption of service or a failure to provide service. In the absence of a contract between the utility and the consumer expressly providing for the furnishing of a service for a specific purpose, a public utility owes no duty to a person injured as a result of an interruption of service or a failure to provide service. (*Niehaus Bros. Co.* v. *Contra Costa etc. Co.* (1911) 159 Cal. 305, 312-316 [113 P. 375]; cf. *Langley* v. *Pacific Gas & Elec. Co.*, supra, 41 Cal.2d 655.) The mere fact that the utility has contracted with the consumer to provide a service for general purposes, e.g., water or electricity, is not sufficient to create a duty. (*Niehaus Bros. Co.* v. *Contra Costa etc. Co.*, supra, 159 Cal. at p. 316; cf. *Hunt Bros. Co.* v. *San Lorenzo etc. Co.* (1906) 150 Cal. 51 [87 P. 1093].) Nor does a duty arise where a public entity contracts with a public utility to furnish water to public hydrants for general fire purposes. (*Ukiah* v. *Ukiah Water and Imp. Co.* (1904) 142 Cal. 173, 178 [75 P. 773].) The consumer is not a third party

beneficiary of the contract between the public entity and the public utility. (*Luis* v. *Orcutt Town Water Co.* (1962) 204 Cal.App.2d 433, 441 [22 Cal.Rptr. 389].) For example, a water company generally owes no duty to a person, whose property is destroyed by fire, to supply water for the extinguishment of the fire. (*Niehaus Bros. Co.* v. *Contra Costa etc. Co., supra,* 159 Cal. 305; *Ukiah* v. *Ukiah Water and Imp. Co., supra,* 142 Cal. 173; *Luis* v. *Orcutt Town Water Co., supra,* 204 Cal.App.2d at p. 440; *Stuart* v. *Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802, 806-808 [110 Cal.Rptr. 543].) In addition, a gas utility company owes no duty to homeowners whose house exploded as a result of the failure of the utility to turn off the gas to the neighborhood in the face of a rapidly approaching fire. (*Lowenschuss* v. *Southern Cal. Gas Co.* (1992) 11 Cal.App.4th 496 [14 Cal.Rptr.2d 59].)

The rationale for this exception to the general duty rule has been variously described. In *Niehaus Bros. Co.* v. *Contra Costa etc. Co., supra,* 159 Cal. 305, the Supreme Court explained: "When we take into consideration the *status* of [utilities] in this state, the nature of the business in which they are engaged, the constitutional control which the state . . . takes in fixing the rates which may be charged for [utility services], and the law imposed duties which the [utilities] must discharge to their customers, no liability such as plaintiff claims was ever contemplated where the only relation shown is such as proceeds from the fact that the [utility] has undertaken to furnish the inhabitants of a municipality with [a service] . . . and is charging ordinance rates for the [service] supplied or to be supplied." (*Id.* at p. 316, italics in original.) The Supreme Court continued: "While it is to be presumed that the rates established by a municipal ordinance are fair and reasonable, this presumption only applies as far as such rates fix the compensation to be paid the [utility] for furnishing [a service] to consumers as a commodity. They are not fixed as a consideration under which the [utility] obligates itself to furnish [the service] for [a specific purpose] with a corresponding liability for failure to do so." (*Id.* at p. 317.)

In *Ukiah* v. *Ukiah Water and Imp. Co., supra,* 142 Cal. 173, the Supreme Court reasoned: " 'The rulings in these cases [holding a water company is not liable to a third party whose property was destroyed by the failure of the water company to provide sufficient water] are generally to the effect that there is no privity of contract between the water company and a citizen which will support the action, and that the contracting company cannot be charged with a greater liability than the city itself.' " (*Id.* at p. 178.)

In *Lowenschuss* v. *Southern Cal. Gas Co., supra,* 11 Cal.App.4th 496, this appellate district concluded that a public utility which enters into a contract to provide a service for a specific remuneration does not undertake to insure

the losses of those injured as a result of its failure to provide such a service. To conclude otherwise would expand the field of obligation of a public utility beyond reasonable limits and impose a crushing burden. (*Id.* at pp. 499-500.) The Court of Appeal stated: "The 'big bang' theory which suggests that the universe is ever expanding is not applicable to the liability of [public utilities]." (*Id.* at p. 501.)

■ No California case has decided the precise issue before us. Other jurisdictions have, however, answered this question in the negative. (*Gin* v. *Yachanin* (1991) 75 Ohio.App.3d 802 [600 N.E.2d 836]; *Turbe* v. *Government of Virgin Islands* (3d Cir. 1991) 938 F.2d 427; *Arenado* v. *Florida Power & Light Company* (Fla.Dist.Ct.App. 1988) 523 So.2d 628; *Burdis* v. *LaFourche Parish Police Jury* (La.Ct.App. 1989) 542 So.2d 117, 120; *Shafouk Nor El Din Hamza* v. *Bourgeois* (La.Ct.App. 1986) 493 So.2d 112; *East Coast Fr. Lines* v. *Consolidated G., E. L. & P. Co.* (1946) 187 Md. 385 [50 A.2d 246]; Annot., Liability of Electric Utility to Nonpatron for Interruption or Failure of Power (1987) 54 A.L.R.4th 667; contra, *Todd* v. *Northeast Utilities* (1984) 40 Conn.Supp. 159 [484 A.2d 247]; *Lemire* v. *New Orleans Public Service* (La.Ct.App. 1989) 538 So.2d 1151.)

The rationale of the out-of-state cases is perhaps best stated by the Maryland Court of Appeals in *East Coast Fr. Lines* v. *Consolidated G., E. L. & P. Co.*, *supra*, 50 A.2d 246: "The [utility] is not charged with using its electric current in any dangerous manner or, by its use, creating any dangerous condition. What it is charged with is a non-performance of its contract with the City. For such non-performance the greater weight of authority is that it is liable only to the City and that it owes no duty to the general public for which it may be made responsible by an action in tort for negligence." (*Id.* at p. 254.)

The Louisiana Court of Appeal also found no duty to a third party arising out of an inoperative streetlight where a public entity contracts with a public utility to maintain streetlights. In arriving at this determination, the appellate court considered the absence of a contractual relationship and a traditional duty-risk analysis. "[T]he duty to supply street lighting did not extend to anyone other than the parties to the contract." (*Shafouk Nor El Din Hamza* v. *Bourgeois*, *supra*, 493 So.2d at pp. 116-117.) "The failure of [the public utility] to provide adequate street lighting was at most the deprivation of a benefit; it was not the violation of a duty." (*Id.* at p. 117.)

The issue of duty is a policy consideration. We must take into consideration not only the foreseeability of harm to a plaintiff but also the burdens to be imposed against a defendant. In determining whether a public utility

should be liable to motorists for inoperable streetlights, we must consider the cost of imposing this liability on public utilities, the current public utility rate structures, the large numbers of streetlights, the likelihood that street-lights will become periodically inoperable, the fact that motor vehicles operate at night with headlights, the slight chance that a single inoperative streetlight will be the cause of a motor vehicle collision, and the availability of automobile insurance to pay for damages.

We are of the opinion that a public utility generally owes no duty to the motoring public for inoperable streetlights. There is no contractual relation between the utility and the injured party, and the injured party is not a third party beneficiary of the utility's contract with the public entity. The public utility owes no general duty to the public to provide streetlights. The burden on the public utility in terms of costs and disruption of existing rate schedules far exceeds the slight benefit to the motoring public from the imposition of liability. As noted, vehicles at night are driven with headlights, it is unlikely that a single inoperable streetlight will be a substantial factor in causing a collision, and automobile insurance is available to cover damages.

In our view, liability may not be imposed on a public utility in these circumstances where (1) the installation of the streetlight is not necessary to obviate a dangerous condition, i.e., there is a duty to install the streetlight and a concomitant duty to maintain it; (2) the failure to maintain an installed streetlight does not create a risk greater than the risk created by the total absence of a streetlight; and (3) the injured party has not in some manner relied on the operation of the streetlight foregoing other protective actions, e.g., a pedestrian chooses a particular route home in reliance on the available streetlighting when the pedestrian would have chosen a different route or a different means of transportation in the absence of lighting. (Cf. Rest.2d Torts, § 324A.)

Such a rule is consistent with the rules applicable to public entities which fail to maintain streetlights. ▇ " 'In the absence of a statutory or charter provision to the contrary, it is generally held that a municipality is under no duty to light its streets even though it is given the power to do so, and hence, that its failure to light them is not actionable negligence, and will not render it liable in damages to a traveler who is injured solely by reason thereof. [ ] A duty to light, and the consequent liability for failure to do so, may, however, arise from some peculiar condition rendering lighting necessary in order to make the streets safe for travel. []' " (*Antenor* v. *City of Los Angeles* (1985) 174 Cal.App.3d 477, 483 [220 Cal.Rptr. 181]; cf. *Gardner* v. *City of*

*San Jose* (1967) 248 Cal.App.2d 798 [57 Cal.Rptr. 176].) ▮ A public utility "cannot be charged with a greater liability than the city itself." (*Ukiah v. Ukiah Water and Imp. Co.*, *supra*, 142 Cal. at p. 178.) Under this analysis, it is apparent that ownership of the streetlight by the utility does not alter the general rule.

Generally, a defendant moving for summary judgment must submit evidence in support of the motion defeating the factual allegations of the complaint. (*FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 381-382 [282 Cal.Rptr. 508].) However, if the complaint fails to allege facts constituting an element of a cause of action, the defendant need not submit evidence concerning the missing element. (*Ibid.*) As to the missing element, the summary judgment motion is transmuted into a test of the pleadings. (*Ibid.*) In this case, the complaint alleges no facts which would impose a duty on SCE in favor of plaintiff to maintain the streetlight in an operative condition. The complaint alleges no facts which indicate the intersection is in special need of lighting. Nor does the complaint allege facts indicating an increased risk of harm from the failed lighting over and above the absence of lighting. Finally, the complaint alleges no facts indicating any reliance on the part of plaintiff. The complaint alleges in conclusory fashion that the inadequate lighting created a dangerous condition because visibility was diminished. This is not sufficient to impose a duty on SCE. Moreover, the evidence submitted by plaintiff in opposition to the motion for summary judgment added nothing to the conclusory statements alleged in the complaint. In fact, the evidence established that there was only a single inoperable streetlight.

▮ Plaintiff alleges, however, that a statutory framework has been established in California imposing a duty on SCE in favor of travelers. Plaintiff cites Public Utilities Code section 2106, which provides that a public utility may be liable to an injured party for damages caused by its acts or omissions in violation of the Constitution, a statute or order of the Public Utilities Commission.[3] Plaintiff follows with citations to Streets and

---

[3]Public Utilities Code section 2106 provides: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. [¶] No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt."

Highways Code sections 27,[4] 941[5] and 1806,[6] which require public entities to maintain their highways, including illumination equipment, in safe and usable condition. These statutes are of no assistance to plaintiff. First, it is clear the Legislature did not intend to incorporate wholesale the duties of public entities into Public Utilities Code section 2106. Second, a public entity's duty to maintain illumination equipment on its highways does not create a duty to third parties for its failure to do so in the absence of a

[4]Streets and Highways Code section 27 provides: "As used in the general provisions and in Divisions 1 (commencing with Section 50), 2 (commencing with Section 900), and 2.5 (commencing with Section 1800), 'maintenance' includes any of the following: [¶] (a) The preservation and keeping of rights-of-way, and each type of roadway, structure, safety convenience or device, planting, illumination equipment, and other facility, in the safe and usable condition to which it has been improved or constructed, but does not include reconstruction or other improvement. [¶] (b) Operation of special safety conveniences and devices, and illuminating equipment. [¶] (c) The special or emergency maintenance or repair necessitated by accidents or by storms or other weather conditions, slides, settlements, or other unusual or unexpected damage to a roadway, structure, or facility. [¶] The degree and type of maintenance for each highway, or portion thereof, shall be determined in the discretion of the authorities charged with the maintenance thereof, taking into consideration traffic requirements and moneys available therefor."

[5]Streets and Highways Code section 941 provides: "(a) Boards of supervisors shall, by proper order, cause those highways which are necessary to public convenience to be established, recorded, constructed, and maintained in the manner provided in this division. [¶] (b) No public or private road shall become a county highway until and unless the board of supervisors, or its designee, by appropriate action, has caused the road to be accepted into the county road system. No county shall be held liable for failure to maintain any road unless and until it has been accepted into the county road system by action of the board of supervisors or its designee. [¶] (c) The acceptance of any road or the acceptance of any road subject to improvements pursuant to Section 66477.1 of the Government Code does not constitute the acceptance of the road into the county road system in the absence of the adoption of a resolution by the board of supervisors accepting the road into the county road system. [¶] (d) In lieu of the procedures set forth in subdivisions (b) or (c), boards of supervisors may, by ordinance, designate a county officer to accept, on behalf of the board, roads or portions thereof, into the county road system and to record conveyances to the county of real property interests for road uses and purposes. The designee shall, prior to recording any conveyance under this section, affix a certificate to the instrument stating the acceptance into the county road system and designating the name or number, or both, of the county road. The designee shall report all acceptances and recordings to the board at the end of the fiscal year, or at more frequent intervals as determined by the board."

[6]Streets and Highways Code section 1806 provides: "(a) No city shall be held liable for failure to maintain any road until it has been accepted into the city street system in accordance with subdivision (b) or (c). [¶] (b) Except as provided by Section 989, or by Section 57329 or 57385 of the Government Code, no public or private street or road shall become a city street or road until the governing body, by resolution, has caused the street or road to be accepted into the city street system. [¶] (c) In lieu of the procedure set forth in subdivision (b), the governing body of a city may, by ordinance, designate a city officer to accept, on behalf of the governing body, streets and roads or portions thereof, into the city street system and to record conveyances to the city of real property interests for street and road uses and purposes. The designee shall, prior to recording any conveyance under this section, affix a certificate to the instrument stating the acceptance into the city street system and designating the name or number, or both, of the city street or road."

dangerous condition. Accordingly, we find no statutory scheme imposing a duty on public utilities to third parties for failure to maintain streetlights.

## DISPOSITION

The judgment is affirmed. SCE is to obtain its costs on appeal from plaintiff.

Armstrong, J., and Godoy Perez, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 18, 1994. Lucas, C. J., did not participate therein.