Filed 5/2/23  Pham v. Southern California Edison CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MICHAEL PHAM, as represented, etc., et al.,<br><br>　　Plaintiffs and Appellants,<br><br>　　v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY,<br><br>　　Defendant and Respondent. | B316026<br><br>(Los Angeles County Super. Ct. No. 20STCV18831) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Mardirossian Akaragian, Garo Mardirossian, Armen Akaragian, and Adam Feit for Plaintiffs and Appellants.

Aneiko L. Hickerson; Greines, Martin, Stein & Richland and Robin Meadow for Defendant and Respondent.

————————————

This case arises out of a tragic car accident. Michael Pham (Pham) and his wife, Ynhi Tran (Tran), were struck by a car while taking a nighttime stroll through their neighborhood. Tran died, and Pham suffered a debilitating brain injury that caused him to become incompetent.

Pham and his two teenage sons (collectively appellants) sued, among others, defendant and respondent Southern California Edison Company (SCE) for providing the ineffective streetlights that allegedly caused the fatal accident.[1] SCE moved for summary judgment, arguing that, as a matter of law, it did not owe appellants a duty of care regarding the streetlights. The trial court granted SCE's motion, and this appeal followed.

We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Accident

On the night of January 23, 2019, Pham and Tran went for a walk to a neighborhood park located in the County of Riverside. At around 8:30 p.m., the pair entered a crosswalk on Morgan Hill Drive, a major street running alongside the park. Within seconds, they were struck by a car attempting to make a left turn through the intersection. The driver claimed that she could not see the couple until she hit them.

### II. The Lawsuit

#### A. *The Complaint*

On May 18, 2020, appellants sued, inter alia, SCE for negligence. They argued that SCE installed and operated the streetlights in the neighborhood where the accident occurred, and claimed that SCE "purposely decrease[d] the amount of street

---

[1] Appellants each sued through a guardian ad litem.

lighting and illumination" in the area "solely for [the] purpose of mitigating light pollution for [a] nearby . . . [o]bservatory," regardless of its "adverse affects on visibility of users of public roadways."

Specifically, appellants alleged that the fateful crosswalk was located "within a densely populated suburban residential community," and that SCE had caused the crosswalk to be "poorly, inadequately, and dangerously under-illuminated . . . so as to create an unreasonably increased risk of serious injury and death, such that said inadequate lighting conditions were a causal factor contributing to the collision" and resulting injuries.

### B. *SCE's Motion for Summary Judgment*

On February 16, 2021, SCE filed a motion for summary judgment. It argued that appellants could not establish a necessary element of their negligence claim against SCE— namely, that the company owed them a duty of care—because "[a]s a matter of law, [SCE] owed no duty . . . to provide streetlights in the first place nor to maintain the streetlights in an operable condition."

SCE's motion primarily relied on *White v. Southern Cal. Edison Co.* (1994) 25 Cal.App.4th 442, 435–436 (*White*), which holds that, in general, "a public utility [company] owes no duty to a person injured as a result of an interruption of service or a failure to provide service." *White* also notes certain exceptions to this rule, stating that a duty could attach if (1) the streetlight "is . . . necessary to obviate a dangerous condition[;]" (2) the "failure to maintain an installed streetlight . . . create[s] a risk greater than the risk created by the total absence of a streetlight[;]" or (3) the injured person "relied on the operation of the streetlight foregoing other protective actions." (*Id.* at p. 451.)

3

SCE argued that because appellants' complaint alleged only a failure to provide adequate streetlights and did not allege facts supporting any of the exceptions to the *White* rule, they could not establish that SCE owed them a duty of care. To support its argument, SCE asked the court to take judicial notice of the fact that it was a public utility company contracted by the County of Riverside to provide streetlighting services in the neighborhood where the accident took place.

### C. *Appellants' Opposition to Summary Judgment*

On June 1, 2021, appellants submitted their opposition to SCE's motion for summary judgment. Among other things, they argued that SCE, not appellants, bore the burden of proof with respect to the *White* exceptions. Appellants characterized the *White* exceptions as an "affirmative defense," and contended that SCE could not obtain summary judgment unless it established the total absence of all three exceptions.

That contention notwithstanding, appellants' opposition included arguments on each of the exceptions. They claimed (1) that surface defects and other physical characteristics of the crosswalk where the incident occurred constituted a dangerous condition which required the provision of adequate streetlights; (2) that the allegedly dim lighting provided by SCE's streetlights created a greater safety risk than total darkness; and (3) that Pham and Tran chose their walking route in reliance on the streetlights providing adequate light. Appellants attached several exhibits of evidence supporting these arguments, including expert declarations from a traffic engineer, an electrical engineer, and an accident reconstructionist, as well as testimony from one of Pham and Tran's sons about the couple's habits and attitudes.

4

Lastly, appellants objected to SCE's request for judicial notice. They also asked the trial court to take notice of local ordinances setting standards for streetlights, which they alleged SCE violated.

### D. *SCE's Reply and Evidentiary Objections*

In its reply to appellants' opposition, SCE reiterated that appellants' complaint failed to allege facts supporting any of the *White* exceptions. SCE argued, inter alia, that most of the evidence appellants proffered in support of the *White* exceptions was irrelevant because it exceeded the scope of their complaint. Consequently, SCE lodged 38 evidentiary objections against appellants' evidence. Each objection included several potential grounds, including relevance and materiality.

### E. *The Summary Judgment Hearing*

After confirming that both appellants and SCE had read its tentative ruling to grant the motion, the trial court entertained oral argument. Appellants argued that the determinative question was whether SCE owed "a duty here, [wa]s there a duty to light[,] [wa]s there a duty to properly light." They agreed that the court was "properly looking at the *White* case [for] guidance on this issue," but contended that "the real difference in our case versus what came in the past is that in our case we have a peculiar condition[,] [a]nd we tried to set out those peculiar conditions in the declarations of our experts."

Appellants repeated their earlier arguments that the *White* exceptions constitute an affirmative defense, and that SCE bore the initial burden to present evidence establishing their absence. Appellants claimed that they had only proffered evidence of the *White* exceptions in their opposition as an exercise in good faith, telling the trial court: "We even went [to] the next step. We said

5

assume SCE met its burden here, here is why [it] d[id]n't meet *White* because of all the evidence that we submitted that shows that you cannot meet your burden on these factors."

The trial court then asked appellants to respond to SCE's argument that they were "limited to the allegations in the complaint, [which] simply talk[] about a lack of lighting. It does not talk about peculiar conditions . . . [and] [w]e don't have an amended complaint that we're dealing with."

Appellants dismissed the argument as "a non sequitur," and claimed that there was no question of SCE having notice of appellants' arguments on the *White* exceptions because "discovery has been consistent with our opposition [and] SCE knows what our position has been." In the alternative, appellants asked "for a continuance so that we can actually amend the pleading to include in it the necessary language that [SCE] thinks is required."

The trial court denied appellants' oral motion for a continuance.

**F.    *The Summary Judgment Ruling***

Ultimately, the trial court adopted its tentative ruling granting summary judgment. In so doing, the trial court granted SCE's request for judicial notice regarding its status as a public utility company and its contracts to provide streetlights to the County of Riverside. It also granted appellants' request for judicial notice of the county's streetlight ordinances.

Additionally, the trial court sustained most of SCE's objections to appellants' proffered evidence, effectively excluding all their expert opinions and percipient witness testimony.

In its detailed order, the trial court found that SCE had successfully demonstrated "that the general rule that it owed

6

[appellants] no duty" applied, especially since appellants' complaint only alleged that SCE "contributed to [Tran's] death [and Pham's injuries] because of negligent maintenance of a streetlight, that caused inadequate streetlighting in the area." The court noted that appellants "failed to properly introduce any admissible evidence showing that all of the three *White* factors are met."

The trial court concluded that while "this [wa]s a tragic case . . . under California law, [SCE] is not responsible for [appellants'] injuries. Because [appellants] cannot establish an essential element of their claim—a legal duty of care—[SCE] is entitled to judgment as a matter of law."

### G.   *Notice of Appeal*

Appellants timely appealed.

**DISCUSSION**

## I.   Relevant Law

### A.   *Summary Judgment Principles*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "To secure summary judgment, a moving defendant may . . . disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established." (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465 (*Sanchez*).)

A defendant shows that an element of a cause of action cannot be established by submitting evidence that the plaintiff does not possess, and cannot reasonably obtain, evidence supporting the element. (*Aguilar v. Atlantic Richfield Co.* (2001)

7

25 Cal.4th 826, 854.) Once a defendant has made this showing, the burden shifts to the plaintiff to set forth the specific facts which prove the existence of a triable issue of material fact. (*Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 975.)

"The pleadings play a key role in a summary judgment motion and ""'"set the boundaries of the issues to be resolved at summary judgment."'" [Citation.]" (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.) "[T]he scope of the issues to be properly addressed in [a] summary judgment motion" is typically "limited to the claims framed by the pleadings. [Citation.] A moving party seeking summary judgment . . . is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion. [Citations.]" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 421 (*Howard*).) Similarly, "[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings," and "[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings." (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 (*California Bank & Trust*).)

**B.** *Negligence and Public Utility Defendants*

Appellants' complaint pled only one cause of action against SCE: negligence. "To prevail on a negligence claim, a plaintiff must establish that the defendant had a duty of care that he or she breached, and that there is causal connection between that breach and damages." (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 507). "[W]hether a defendant owes the requisite 'duty of

8

care,' in a given factual situation, presents a question of law which is to be determined by the courts alone." (*Peter W. v. San Francisco Unified School Dist.* (1976) 60 Cal.App.3d 814, 822.)

Public utilities, like other entities, have "a general duty to exercise reasonable care in the management of [their] personal and real property." (*White, supra,* 25 Cal.App.4th at p. 447; see also Civ. Code, § 1714, subd. (a).) Thus, public utilities may be liable to third parties who are directly injured by the utility's defective or improperly installed equipment. (See, e.g., *Jackson v. Utica Light & Power Co.* (1944) 64 Cal.App.2d 885, 895 [public utility liable for the death of a construction worker electrocuted by an inadequately maintained power line], *Gerberich v. Southern California Edison Co.* (1935) 5 Cal.2d 46, 53 [public utility liable for the death of a motorist killed when his car struck a power pole that the utility installed too close to the road].)

However, California law expressly limits the duties that a public utility owes to third parties. "In the absence of a contract between the utility and the consumer expressly providing for the furnishing of a service for a specific purpose, a public utility owes no duty to a person injured as a result of an interruption of service or a failure to provide service." (*White, supra,* 25 Cal.App.4th at pp. 435–436.) This limited duty extends to the provision of streetlights. Generally, a public utility owes no duty to provide the public with fully operable streetlights. (*White, supra,* at p. 451.) And, if a public utility does provide streetlighting services, the utility does not automatically owe the public a duty to make sure that those services are adequate. (*Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 139 (*Mixon*).)

9

This general rule against liability has several exceptions. As mentioned above, the *White* court held that "liability may . . . be imposed on a public utility" for failing to provide operable streetlights "where (1) the installation of the streetlight is . . . necessary to obviate a dangerous condition, i.e., there is a duty to install the streetlight and a concomitant duty to maintain it; (2) the failure to maintain an installed streetlight does . . . create a risk greater than the risk created by the total absence of a streetlight; and (3) the injured party has . . . in some manner relied on the operation of the streetlight foregoing other protective actions, e.g., a pedestrian chooses a particular route home in reliance on the available streetlighting when the pedestrian would have chosen a different route or a different means of transportation in the absence of lighting."[2] (*White*, *supra*, 25 Cal.App.4th at p. 451.) To establish that a public utility defendant owes a duty to provide adequate streetlights, the plaintiff's complaint must allege facts supporting at least one of these exceptions. (*Id.* at p. 452.)

## II.    Standard of Review

We independently review the trial court's grant of summary judgment. In conducting our review, "we follow the traditional three-step analysis. 'We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if

---

[2]    There is some confusion about whether these three exceptions are disjunctive or conjunctive, amongst both the parties and the appellate courts. We need not decide this issue; we assume arguendo that the *White* exceptions are disjunctive.

the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]' [Citation.]" (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975.)

In "reviewing the trial court's decision to grant summary judgment, we liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts about the evidence in that party's favor. [Citation.]" (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 190.)

## III. Analysis

### A. *Summary Judgment Was Proper*

As noted above, appellants' complaint asserts a single cause of action against SCE for negligence based on its alleged failure to provide adequate streetlights. The trial court found that SCE was entitled to summary judgment because it successfully negated one of the elements of this cause of action—namely duty of care. We agree.

In its motion, SCE proffered evidence that it is a public utility company and that the County of Riverside (rather than appellants) contracted it to provide streetlights in the neighborhood where the accident took place. This establishes the conditions necessary to trigger the general rule against liability espoused in *White*. (*White, supra*, 25 Cal.App.4th at pp. 435–436.)

Urging us, as they did the trial court, to conclude otherwise, appellants direct us to evidence on each of the *White* exceptions. The problem for appellants is that this evidence exceeds the scope of the theory of liability asserted in their

11

complaint. (See *California Bank & Trust*, *supra*, 222 Cal.App.4th at p. 637, fn. 3.)

A generous reading of the complaint's allegations does not suggest that appellants' negligence claim is based on anything other than SCE's failure to provide adequately bright streetlights in a densely populated suburban area. (*Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 483 ["'[I]t is generally held that a municipality is under no duty to light its streets . . . and hence, that its failure to light them is not actionable negligence, and will not render it liable in damages to a traveler who is injured *solely by reason thereof*'"] (italics added); *Mixon*, *supra*, 207 Cal.App.4th at p. 139 ["A public utility . . . cannot be charged with greater liability than the public entity itself in this regard"].)

Nothing in the complaint suggests that appellants intended to pursue a theory of liability encompassing the *White* exceptions. The complaint does not allege that a dangerous condition other than reduced visibility existed at the accident site; that the allegedly dim lighting posed a danger greater than total darkness; or that Pham and Tran forewent protective actions in reliance on the streetlight. Moreover, it would be extraordinarily difficult for us to construe the complaint as alleging any of these things when appellants have consistently argued (both before the trial court and on appeal) that it is SCE, and not appellants, that bears the burden of establishing the *White* exceptions.[3]

_____

[3] To the extent appellants could have proceeded on one of these theories by amending their complaint, we note that they did not seek leave to amend until the summary judgment hearing was underway—at which point it was too late. (See *Howard*, *supra*, 203 Cal.App.4th at p. 421.) Appellants do not challenge

12

The bottom line is that, here as in *White*, appellants' "complaint alleges in conclusory fashion that the inadequate lighting created a dangerous condition because visibility was diminished." (*White, supra*, 25 Cal.App.4th at p. 452.) And, as in *White*, "[t]his is not sufficient to impose a duty on SCE." (*Ibid.*) Accordingly, we conclude that the trial court properly granted summary judgment in SCE's favor.[4]

## B. *Appellants' Counterarguments*

Appellants raise seven arguments against our conclusion. First, they continue to insist that the *White* exceptions function not as a threshold requirement for a plaintiff to establish liability, but as an affirmative defense that must be raised by a public utility defendant. This argument fundamentally misunderstands *White*. The *White* court explicitly stated that a plaintiff must allege "facts which would impose a duty on" a public utility defendant "to maintain [a] streetlight in an operative condition." (*White, supra*, 25 Cal.App.4th at p. 452.) The phrase "facts which would impose a duty" unambiguously refers to the *White* exceptions; in the sentences immediately following this phrase, the court faulted the plaintiff for failing to allege facts supporting any of the three exceptions. (*Ibid.*)

Appellants ignore the plain text of *White* and attempt to analogize its exceptions to the affirmative defense of design immunity. But *White* is readily distinguishable from that defense. Design immunity shields a public entity from liability *if*

---

the trial court's denial of their oral motion requesting a continuance for leave to amend.

[4] Because we resolve this appeal on this ground, we need not address the parties' other arguments, including their substantive arguments about the *White* exceptions.

13

certain conditions apply (Gov. Code, § 830.6), while *White* shields public utility companies from liability *unless* certain conditions apply (*White, supra,* 25 Cal.App.4th at p. 451). These differences in construction matter. Design immunity is an affirmative defense because it assumes that the defendant is liable until it establishes conditions justifying the award of immunity. *White* does just the opposite, and so is not a defense at all; it presumes that the defendant is *not* liable unless the plaintiff can prove otherwise.

Second, appellants argue that *White* should not entirely control their case, because *White* involved a car crash between two motorists, not between one motorist and two pedestrians. This distinction does not compel a different result; appellate courts have applied *White* to cases concerning collisions between cars and pedestrians without difficulty. (See, e.g., *Mixon, supra,* 207 Cal.App.4th at pp. 129, 140.) And, in any event, appellants effectively forfeited any objection to *White* by conceding before the trial court that it controls this case. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 73 [declining to consider an argument on appeal when the party "took the opposite position in the trial court"].)

Appellants also argue that *White* and *Mixon* should not apply because (1) SCE is not entitled to the benefit of the *White* rule against liability because streetlighting is an "ancillary optional service" rather than a traditional public utility service; and (2) unlike the plaintiffs in *White* and *Mixon*, appellants argue that SCE violated a local ordinance mandating a certain level of brightness from streetlights. (Capitalization & bolding omitted.) Appellants cite no legal authority for either of these propositions. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194

14

Cal.App.4th 939, 956 ["'The absence of cogent legal argument or citation to authority allows this court to treat [a] contention as waived.' [Citations.]"].)

Furthermore, both arguments are individually flawed. The *White* and *Mixon* courts explicitly applied the general rule against liability to public utilities providing streetlighting services, regardless of whether those services are considered "ancillary" or "traditional." And appellants have not shown that they, as private citizens, have standing to bring a claim to enforce the County of Riverside's streetlighting ordinance. (*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 144–147 [plaintiffs lacked standing to enforce a statute because it neither expressly contained nor implied a private right of action]; former Riverside County Ordinance No. 461.10 [sets forth standards for streetlights, but does not provide a private right of action or similar enforcement mechanism].)

<u>Third</u>, appellants argue that the trial court failed to address the argument that appellants' evidence exceeded the scope of their pleadings.[5] This argument is flawed for two reasons. For one, it is inaccurate; the trial court invited argument on this exact issue at the summary judgment hearing, prompting appellants to make a belated oral motion for leave to amend. But even if appellants' argument was correct, it is irrelevant. Because our review of summary judgment is de novo, we may affirm the trial court's judgment if it is correct on any

---

[5] Relatedly, appellants claim that SCE did not timely raise the scope-of-pleadings argument. This contention is meritless. SCE first argued that appellants' opposition to summary judgment exceeded the scope of the pleadings in its reply to that opposition. The argument could not have been raised any earlier.

ground.  (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140 ["[O]n appeal following summary judgment, the trial court's reasoning is irrelevant . . . .  [The appellate court] exercise[s] [its] independent judgment . . . and must affirm on any ground supported by the record"] [Citations omitted.].)

Fourth, appellants argue that even if their complaint did not allege facts supporting any of the *White* exceptions, any opposition arguments about those exceptions did not exceed the complaint's general theory of liability.  Appellants contend that it was sufficient for them to generally allege that SCE owed them a duty, as that placed SCE and the trial court on notice that appellants would argue any facts necessary to establish that duty.  This argument is misguided.

A plaintiff's opposition to summary judgment cannot rely on "new factual issues [that] present different theories of recovery or rest on a fundamentally different factual basis."  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1257.)  And, as we explained above, appellants' arguments regarding the *White* exceptions rested on a completely different set of facts from those alleged in their complaint.  The cases appellant cites to the contrary are unavailing. (*Id.* at pp. 1257–1258 [injured motorist suing a public utility for negligence exceeded the scope of the pleadings by introducing facts about a new dangerous condition not mentioned in the operative complaint]; *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 488 [prevailing summary judgment movant did not need to negate its liability as to unpled causes of action].)

Fifth, appellants present a barrage of arguments against the trial court's rulings sustaining SCE's evidentiary objections.  Appellants contend that their expert opinions and percipient

16

witness testimony are relevant and admissible to prove each of the three *White* exceptions. We disagree, as any evidence appellants advanced in support of the *White* exceptions is inadmissible as irrelevant. (*California Bank & Trust*, *supra*, 222 Cal.App.4th at p. 637, fn. 3 ["Evidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings"].)

Sixth, appellants argue that SCE owes them a duty of care under the negligent undertaking theory, suggesting that *White* does not preclude the application of this doctrine to public utility defendants.[6] This argument misreads *White*, which incorporates and modifies the negligent undertaking theory as it applies to public utility defendants. (*See White*, *supra*, 25 Cal.App.4th at p. 451.)

Lastly, appellants contend that summary judgment is improper because there are triable issues of fact about whether the allegedly dim streetlights caused the fateful accident. This argument is immaterial. Regardless of what appellants can demonstrate about the element of causation, SCE is entitled to summary judgment because it successfully established that it does not owe appellants a duty of care. (*Sanchez*, *supra*, 47

---

[6] "[T]he negligent undertaking doctrine (also referred to as the Good Samaritan doctrine), which is contained in section 324A of the Restatement Second of Torts," provides that, "'[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking'" under certain circumstances. (*Dekens v. Underwriters Laboratories Inc.* (2003) 107 Cal.App.4th 1177, 1181–1182, fn. omitted.)

Cal.App.4th at p. 1465 [defendant is entitled to summary judgment if it "disprove[s] *at least one* essential element of the plaintiff's cause of action [citations] or show[s] that an element of the cause of action cannot be established"] (italics added.))

## DISPOSITION

The judgment is affirmed. SCE is entitled to its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
LUI

_____, J.
HOFFSTADT