Filed 11/2/17

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| JOANNE LICHTMAN et al., | B265373 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC492694) |
| v. | |
| SIEMENS INDUSTRY INC., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, John P. Doyle, Judge. Reversed and remanded with directions.

Shernoff Bidart Echeverria Bentley, Gregory L. Bentley, Steven Schuetze; Shernoff Bidart Echeverria, Michael J. Bidart, Steven Schuetze; The Ehrlich Law Firm, Jeffrey I. Ehrlich, for Plaintiffs and Appellants Joanne Lichtman, Douglas Evans, and Samuel Evans.

Haight Brown & Bonesteel, William O. Martin, Jr., Vangi M. Johnson, Whitney L. Stefko, for Defendant and Respondent.

## INTRODUCTION

On the night of plaintiffs' accident, there were no batteries in a traffic signal's battery backup unit. During a power outage, plaintiffs' vehicle entered the dark intersection and was struck by another car. Plaintiffs sued the entity responsible for maintaining the battery backup system, alleging its negligence proximately caused their injuries. The trial court granted defendant's motion for summary judgment on the basis defendant owed no duty of care to plaintiffs as a matter of law. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2004, the City of Glendale (the City) installed battery backup units for traffic signals at various intersections to promote community safety by providing power in the event of a power outage.[1] Four years later, the City contracted with Siemens Industry Inc., doing business as Republic ITS (defendant), to perform preventive and extraordinary maintenance, service, and repairs on electrical traffic-related devices at intersections in the City, including the battery backup system.

According to the City's traffic engineer, Khang Vu, the City expected defendant to provide notification when there was a problem with a traffic signal, including whether a backup system battery required replacement at a particular location. Defendant needed authorization from the City's traffic engineer to replace a battery.

---

[1] Notwithstanding deposition testimony by its own personnel, defendant disputes that traffic signals and a battery backup system are in place to promote public safety rather than merely maintain traffic flow.

On January 12, 2011, the battery backup unit for the traffic signal at the Glendale Avenue/Broadway intersection indicated "low voltage." Batteries at this and other locations were failing to hold their charges, and defendant removed a number of units for testing. In August 2011, a unit with new batteries and a new battery temperature sensor was installed at one intersection to see if the problem had been resolved. Defendant reinstalled a battery backup unit in the Glendale Avenue/Broadway traffic signal at the same time, but did not insert any batteries. The unit remained inoperable until batteries were inserted 11 months later, in July 2012.

On September 4, 2011, a power outage caused the traffic signal at the Glendale Avenue/Broadway intersection to go dark. Because there were no batteries in the backup unit for that intersection, the traffic signal did not function in any direction. At approximately 11:00 p.m., the vehicle driven by Joanne Lichtman, with her spouse Douglas Evans and son Samuel Evans (plaintiffs) as passengers, entered the intersection. Plaintiffs' car was broadsided on the driver's side by another vehicle, careened sideways, and hit a pole. All plaintiffs were injured, Lichtman severely.

Plaintiffs sued several entities to recover damages for their personal injuries.[2] Against defendant, plaintiffs asserted three causes of action based on negligence theories. They resolved their suit against all parties except defendant.

Defendant moved for summary judgment, contending it owed no duty of care to plaintiffs and its actions were not a

---

[2] The other defendants were the seller of the battery backup system and the entity that serviced and maintained the City's power grid. The City was not a party.

proximate cause of plaintiffs' injuries.  The trial court ruled as a matter of law defendant did not owe plaintiffs a duty of care, but also concluded plaintiffs raised a triable issue of material fact as to proximate cause.  The first ruling was dispositive, however, and judgment was entered in defendant's favor.

## DISCUSSION

The elements for negligence causes of action are the existence of a duty of care, breach of that duty, and an injury proximately caused by the breach.  (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.)  The defendant in a negligence action is entitled to summary judgment if it demonstrates "one or more elements of the cause of action, even if not separately pleaded, cannot be established."  (Code Civ. Proc., § 437c, subd. (p)(2).)  The trial court found as a matter of law plaintiffs could not establish a duty of care and granted summary judgment in defendant's favor.  That ruling presents a question of law for our de novo review.  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770-771 (*Cabral*).)

For the reasons that follow, we reverse.  Because the trial court was not presented with cross-motions for summary judgment, we do not find defendant owed plaintiffs a duty of care as a matter of law.  Rather, we hold defendant failed to establish it was entitled to judgment as a matter of law.  (*Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1269 (*Laabs*).)

## I.     Duty — Overview

The "fundamental element" for every negligence cause of action is "the existence of a legal duty of care running from the

4

defendant to the plaintiff." (*Taylor v. Elliott Turbomachinery Co., Inc.* (2009) 171 Cal.App.4th 564, 593.) "A duty may arise through statute, contract, or the relationship of the parties."[3] (*National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc.* (2009) 171 Cal.App.4th 35, 45 (*National Union*); see also *J'Aire Corp., supra,* 24 Cal.3d at p. 803.) California also recognizes a common law duty in certain circumstances based on the theory of negligent undertaking. (*Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 612 (*Artiglio*); Rest.2d Torts, § 324A (section 324A).)

When the duty question concerns "the management of [a defendant's] person or property," courts look to Civil Code section 1714. (See *Cabral, supra,* 51 Cal.4th at p. 768.) Per Civil Code section 1714, everyone owes everyone else a duty to exercise ordinary care "in the management of his or her person or property." Accordingly, the existence of a duty is the rule.

Unless there is a statutory exception to the general rule of duty, courts fashion one only "where 'clearly supported by public policy.'" (*Cabral, supra,* 51 Cal.4th at p. 771.) Almost 50 years ago, in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*), our Supreme Court identified the public policy considerations that may result in a court's conclusion that no duty exists: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the

---

[3] The "special-relationship-based duty" typically applies to hold a defendant liable for the criminal acts of third persons. (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235 (*Delgado*).) It also applies in pure economic loss cases. (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 804 (*J'Aire*).)

moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.* at p. 113.)

A duty running from a defendant to a plaintiff may arise from contract, even though the plaintiff and the defendant are not in privity. (*Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*)[4]; *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370.) Under these circumstances, the existence of a duty is not the general rule, but may be found based on public policy considerations.

In *Biakanja,* decided a decade before *Rowland,* our Supreme Court identified the factors that may result in a court's conclusion a duty exists: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered

---

[4]   *Biakanja* involved economic losses only, but the evolution in legal reasoning that allowed the *Biakanja* court to permit a plaintiff with only economic losses to recover for negligent performance of a contract where the plaintiff and defendant are not in privity was based on case law that permitted a personal injury plaintiff not in privity with the defendant to recover. (*Biakanja, supra,* 49 Cal.2d at p. 649; see also *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 574 ["the significance of privity has been greatly eroded over the past century"].)

6

injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Biakanja, supra,* 49 Cal.2d at p. 650.)

It is no coincidence many of the factors courts consider to recognize an exception to the general duty rule in Civil Code section 1714 mimic those courts consider to impose a duty to a third person when the issue is the negligent breach of contractual obligations. Also, in the *Biakanja* context, the consideration concerning "the extent to which the transaction was intended to affect the plaintiff" serves as a bridge between the absence of privity and liability, particularly in situations where the only claimed losses are economic. (*Biakanja, supra,* 49 Cal.2d at p. 650.)

Not surprisingly, when one turns to common law, the considerations are again similar. Section 324A articulates what is typically referred to as the Good Samaritan rule or the negligent undertaking theory of liability.[5] (*Paz v. State of California* (2000) 22 Cal.4th 550, 559 (*Paz*).) Section 324A is applied to determine the "duty element" in a negligence action where the defendant has "'specifically . . . undertaken to perform

---

[5] Section 324A provides, "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

7

the task that he is charged with having performed negligently, for without the actual assumption of the undertaking there can be no correlative duty to perform that undertaking carefully.'" (*Artiglio, supra,* 18 Cal.4th at pp. 614-615.) The negligent undertaking theory of liability applies to personal injury and property damage claims (*Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 290 (*Mukthar*); *FNS Mortgage Service Corp. v. Pacific General Group, Inc.* (1994) 24 Cal.App.4th 1564, 1572), but not to claims seeking only economic loss (*State Ready Mix, Inc. v. Moffatt & Nichol* (2015) 232 Cal.App.4th 1227, 1235). Our Supreme Court has described the negligent undertaking and special relationship doctrines as "related but separate." (*Delgado, supra,* 36 Cal.4th at pp. 248-249.)

A finding of liability to third persons under the negligent undertaking theory "requires evidence that: (1) the actor undertook, gratuitously or for consideration, to render services to another; (2) the services rendered were of a kind the actor should have recognized as necessary for the protection of third persons; (3) the actor failed to exercise reasonable care in the performance of the undertaking; (4) the actor's failure to exercise reasonable care resulted in physical harm to the third persons; and (5) *either* (a) the actor's carelessness increased the risk of such harm, or (b) the actor undertook to perform a duty that the other owed to the third persons, or (c) the harm was suffered because either the other or the third persons relied on the actor's undertaking." (*Paz, supra,* 22 Cal.4th at p. 559.) Unless all three predicate alternatives in the fifth factor are negated, a defendant may be found to owe a duty to third persons under the negligent undertaking theory.

8

## II.    Analysis

### A.    *Civil Code Section 1714*

This case does not involve defendant's management of its own property.  Accordingly, our inquiry does not involve a determination as to whether public policy supports an exception to the general duty rule.  (*Cabral, supra,* 51 Cal.4th at p. 771; *Rowland, supra,* 69 Cal.2d at p. 112.)  Nonetheless, appellate decisions analyzing the *Cabral/Rowland* factors are useful for our purposes because of the considerable overlap with the *Biakanja* factors.  (*Formet v. Lloyd Termite Control Co.* (2010) 185 Cal.App.4th 595, 604.)

In this context, we briefly digress to examine *White v. Southern Cal. Edison Co.* (1994) 25 Cal.App.4th 442 (*White*), a decision relied upon by defendant and the trial court.  In *White,* the plaintiff's moped collided at night with a left-turning van in an intersection.  The nearest streetlight, which was more than 130 feet away, was not functioning at the time of the accident and the plaintiff contended the lack of illumination proximately caused his injuries.  The plaintiff sued the public utility that owned and maintained the streetlight.  The trial court granted the public utility's motion for summary judgment and this court affirmed.

*White* was decided after *Rowland.*  This Division acknowledged Civil Code section 1714's general duty rule applied to public entities, which on occasion are found liable to injured plaintiffs.  (*White, supra,* 25 Cal.App.4th at pp. 447-448.)  We also recognized public policy considerations on occasion justify a departure from the general duty rule and result in the conclusion that a public utility owed no duty.  (*Id.* at pp. 448-449.)

9

We framed the issue in *White* as follows: "Does an electric utility company owe a duty to motorists injured in motor vehicle collisions caused in part by an inoperative streetlight which the utility [owns and] has contracted to maintain?" (*White, supra,* 25 Cal.App.4th at p. 447.) Our court then engaged in a *Rowland* analysis and concluded an exception to the general rule of duty was appropriate.

*White* is distinguishable from this case in two principal respects. First, *White* involved the general duty rule in Civil Code section 1714. Second, the defendant was a public utility. Nothing in the *White* decision suggests a private entity like defendant shares the same policy considerations as a public utility.

### B. *Biakanja, supra,* 49 Cal.2d 647

*Biakanja* guides us in cases involving contracts between a defendant and a person other than the plaintiff. As already mentioned, the absence of privity presents no hurdle. Rather, we examine the *Biakanja* factors to determine whether defendant established as a matter of law that it owed no duty to plaintiffs.

### 1. *Biakanja* Factors and Analysis

#### a. *The Extent to Which the Transaction Was Intended to Affect Plaintiffs*

Whether one views a battery backup system as promoting public safety or merely regulating traffic flow, the units help drivers and pedestrians safely traverse traffic intersections during power outages. The contract between defendant and the City was clearly intended to, and does, affect plaintiffs. This

factor fails to support the conclusion that defendant owed no duty as a matter of law.

### b. *Foreseeability of Harm*

Drivers approaching a signalized intersection in the dark when the traffic signals are not working are supposed to treat the intersection as a four-way stop and proceed only when it is safe. (Veh. Code, § 21800, subd. (d)(1).) As in many aspects of daily life, however, "common experience shows they do not always do so." (*Cabral, supra,* 51 Cal.4th at p. 775.) It is foreseeable motorists and pedestrians entering an intersection when the traffic signals are not operating due to a power outage, particularly at night, may become confused and suffer harm if the battery backup unit is not operational. The foreseeability factor does not support an absence of duty as a matter of law.

### c. *The Degree of Certainty that Plaintiffs Suffered Injury*

Unquestionably, these plaintiffs sustained injuries in the intersection collision. Examining this factor from a broader perspective, the likelihood of injury when vehicles collide in an intersection normally controlled by traffic signals is not subject to reasonable dispute. (See, e.g., *Laabs, supra,* 175 Cal.App.4th at p. 1278.) This factor also does not support an absence of duty as a matter of law.

### d. *The Closeness of the Connection Between Defendant's Conduct and the Injury*

Although not in so many words and not in the context of a *Cabral/Rowland/Biakanja* analysis, the trial court addressed

11

this factor and found a triable issue of material fact as to whether defendant's conduct was a proximate cause of plaintiffs' injuries. We agree. Defendant cannot rely on this factor to conclude there is an absence of duty as a matter of law.

> e. *Moral Blame Attached to Defendant's Conduct*

This factor traditionally requires little discussion. "Negligence in the execution of contractual duties is generally held to be morally blameworthy conduct." (*National Union, supra,* 171 Cal.App.4th at p. 47.) The *National Union* holding vis-à-vis moral blame is noteworthy because that case involved economic loss only. (See also *J'Aire, supra,* 24 Cal.3d at p. 805 [another case involving only economic loss, where our Supreme Court noted defendant's "lack of diligence . . . was particularly blameworthy since it continued after the probability of damage was drawn directly to [the defendant's] attention"]; *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1612 (*Mintz*) ["'moral blame' from an erroneous decision to withhold a medical treatment is equally apparent"; case involved personal injury and emotional distress damages].) Again, this factor does not justify concluding as a matter of law that defendant owed no duty to plaintiffs.

> f. *Preventing Future Harm*

*Cabral, supra,* 51 Cal.4th at pages 781-782, explained, "The overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible. The policy question is whether that consideration is outweighed, for a category of negligent conduct, by laws or mores

12

indicating approval of the conduct or by the undesirable consequences of allowing potential liability."

In this case, the analysis is primarily one of common sense. A battery backup system exists to keep traffic signals operational for a period of time during a power outage. The City paid defendant to maintain the battery backup system in working condition. Under these circumstances, the public policy to prevent future harm outweighs any perceived unfairness in imposing liability should the trier of fact determine defendant negligently performed its contractual obligation to maintain the battery backup system. This factor, too, does not support the absence of duty as a matter of law.

### 2. *Biakanja* Conclusion

Power outages in a particular geographical area typically affect all illumination sources. A power outage late at night plunges the entire area surrounding an intersection into darkness. Even with headlights, vehicle and vehicle/pedestrian accidents and injuries are foreseeable under those conditions. Traffic signals that remain operational during a power outage because they are backed up by a battery system have the potential to prevent accidents and injuries. A public policy analysis considering the *Biakanja* factors does not support the conclusion that defendant established the absence of a duty of care as a matter of law. (*Burch v. Superior Court* (2014) 223 Cal.App.4th 1411, 1419-1422 [writ issued after trial court granted the defendant's motion for summary adjudication of issues on negligence theory]; *Mintz, supra,* 172 Cal.App.4th at pp. 1610-1613 [reversed judgment on negligence theories after

13

demurrer sustained without leave to amend, holding the defendant owed a duty of care].)

### C.    *Negligent Undertaking—Section 324A*

The first four factors under section 324A do not require in-depth analysis. Their role is to set the stage for consideration of the fifth factor, which is the principal duty element. The evidence relevant to the first four factors demonstrates defendant, for consideration, undertook to render services to the City. The services—to keep the battery backup system operational—"were of a kind the actor should have recognized as necessary for the protection of third persons." (*Artiglio, supra,* 18 Cal.4th at p. 613.) Should a duty be found to exist, the trier of fact will determine whether defendant failed to exercise ordinary care and whether that failure proximately caused plaintiffs' injuries.

To establish as a matter of law that defendant does not owe plaintiffs a duty under a negligent undertaking theory, defendant must negate all three alternative predicates of the fifth factor: "(a) the actor's carelessness increased the risk of such harm, or (b) the actor undertook to perform a duty that the other owed to the third persons, or (c) the harm was suffered because of the reliance of the other or the third persons upon the undertaking." (*Artiglio, supra,* 18 Cal.4th at p. 614.)

The question for us, then, is whether defendant established as a matter of law that none of the alternative predicates identified as the fifth factor in section 324A could apply. Defendant did not.

Defendant's evidence in support of the motion for summary judgment did not negate as a matter of law element (a), that "the

14

actor's carelessness increased the risk of such harm." The City recognized the risk of harm increases when traffic signals are not operational, particularly during a nighttime power outage, and acted to reduce the risk by contracting with defendant to maintain a battery backup system. If defendant negligently failed to install the batteries, a trier of fact could reasonably conclude defendant's conduct increased the risk of harm to plaintiffs.

Nor did defendant negate as a matter of law element (c), that "the harm is suffered because of the reliance of the other [in this case, the City] or the third persons upon the undertaking." A reasonable inference from the evidence is that the City relied on the battery backup system to illuminate traffic signals when portions of the electrical grid were dark as the result of a power outage. The City was confronted with a known risk—power outages will happen and traffic signals will stop operating. The City's response to ameliorate the harmful effects of that risk was to install a battery backup system and enter into a contract with defendant to maintain it. The City could reasonably expect defendant would perform its contractual obligations in a non-negligent manner.

The undisputed facts here present a classic scenario for consideration of the negligent undertaking theory. This theory of liability is typically applied where the defendant has contractually agreed to provide services for the protection of others, but has negligently done so. For example, the defendant in *Mukthar, supra,* 139 Cal.App.4th 282 contracted with a convenience store owner to provide armed, uniformed security guards between 9:00 p.m. and 5:00 a.m. No guard was on duty after 9:00 p.m. on the evening the store clerk was assaulted by

15

several customers.  The injured clerk sued the security company, and the trial court granted the defendant's motion for summary judgment.

The Court of Appeal reversed, noting, "the harm that befell [the plaintiff] was precisely the kind of harm that [the defendant] was there to prevent, i.e., an assault on a store employee." (*Mukthar, supra,* 139 Cal.App.4th at p. 291.)  The Court of Appeal then explained, "it is a reasonable inference that the presence of an armed guard in close proximity to [the clerk] would have prevented the assault.  Whether the trier of fact will actually draw that inference [is left for another day]."  (*Id.* at p. 292.)

*Mukthar* provides a good analytical contrast to the facts in *Dekens v. Underwriters Laboratories Inc.* (2003) 107 Cal.App.4th 1177 (*Dekens*).  The plaintiffs' decedent in *Dekens* repaired small appliances.  He died of mesothelioma, contracted as a result of exposure to asbestos, which was then a not-uncommon component in small electrical appliances.  His heirs sued Underwriters Laboratories (U.L.) on a negligent undertaking theory, contending the defendant undertook a certification process to safeguard the health of consumers, including those individuals who repaired U.L.-certified appliances.  (*Id.* at p. 1179.)

The defendant successfully moved for summary judgment, and the Court of Appeal affirmed.  The appellate panel posed two threshold questions:  "Did U.L. undertake to provide services [to the decedent] and, if so, what was the scope of that undertaking?" (*Dekens, supra,* 107 Cal.App.4th at p. 1182.)  The Court of Appeal agreed U.L. tested and certified appliances for safety based on electrical shock, heat, and fire, but found the undertaking did not

16

include a "guarantee [of] safety from cancer-causing asbestos." (*Id.* at p. 1187.) The appellate panel explained, "U.L. met its burden on summary judgment by showing through admissible evidence that it never undertook to test small appliances for medical safety or to certify the appliances would not cause cancer. Plaintiffs failed to show a triable issue of material fact regarding the existence and scope of any such undertaking by U.L. The trial court properly granted summary judgment." (*Id.* at p. 1180.)

Unlike the *Dekens* circumstances, defendant here did not meet its burden on summary judgment to show it never undertook to maintain the City's battery backup system. *Mukthar* is instructive on this point. Plaintiffs' injuries were caused by a nighttime intersection collision during a power outage. Defendant was not responsible for the power outage, but by contract it undertook to maintain the battery backup unit at the intersection to prevent—or at least mitigate—the foreseeable and increased risk of intersection collisions when an entire area is dark as the result of a power grid failure. A reasonable inference from the evidence before the trial court is that an operational battery backup unit would have prevented the collision. (*Mukthar, supra,* 139 Cal.App.4th at p. 292.) Under a section 324A analysis, the evidence did not support the trial court's conclusion that no duty existed as a matter of law.

In this regard, defendant's reliance on *Paz, supra,* 22 Cal.4th 550 is misplaced. The plaintiff in *Paz* was injured in a traffic accident in an intersection all parties agreed was in a dangerous condition. Sometime before the accident, a developer sought approval for a residential project near the intersection. The City of Los Angeles conditioned permit approvals for the

17

housing project on the developer's agreement to signalize the intersection and improve lane striping. (*Id.* at pp. 554-555.) The developer agreed to those terms, but the accident occurred before the developer obtained all the necessary permits for the signal and street work.

The plaintiff sued the developer and its contractors (collectively, nongovernmental defendants) under negligence theories, asserting they negligently delayed installing the traffic signals. The trial court granted summary judgment for the nongovernmental defendants and the Court of Appeal majority reversed, basing its decision on a *Biakanja* analysis. (*Paz, supra,* 22 Cal.4th at pp. 553-554, 557.)

The Supreme Court reversed the decision of the Court of Appeal and directed that judgment be entered in favor of the nongovernmental defendants. The Supreme Court majority opinion framed and analyzed the duty issue as follows: "This case concerns the duty private contractors owe the general public when they undertake work that might affect an allegedly dangerous condition of public property. Consequently, we consider the negligent undertaking theory of liability articulated in Restatement Second of Torts, section 324A (section 324A), and its application in this context." (*Paz, supra,* 22 Cal.4th at p. 553.)

The *Paz* majority assumed the first four section 324A elements were satisfied. (*Paz, supra,* 22 Cal.4th at p. 559.) Turning its attention to the alternate predicates in the fifth element, a majority of the justices concluded none of the three alternative predicates for the application of section 324A was met. Insofar as alternative (a) was concerned, no evidence supported an inference the nongovernmental defendants' conduct increased the risk of physical harm to plaintiff beyond that which

18

already existed in the dangerous intersection. (*Paz, supra,* 22 Cal.4th at p. 560.) The nongovernmental defendants did not undertake to perform a duty the city owed to the plaintiff, eliminating alternative (b). (*Id.* at p. 561.) And there was no evidence the plaintiff or the city relied on the nongovernmental defendants to install the traffic signals by any particular date, negating application of alternative (c). (*Ibid.*)

Here, as in *Paz,* the first four section 324A factors tend to support the conclusion that defendant owed a duty of care to plaintiffs, but these factors are not determinative of the duty issue. Unlike the situation in *Paz,* the evidence in this case raises inferences that defendant increased the risk of harm during a power outage and the City relied on the battery backup system to promote public safety. No more is needed to defeat summary judgment on the duty issue.

## III.   Statutory Immunity Not Applicable

In presenting the motion for summary judgment, defendant did not engage in analyses under *Cabral, Rowland, Biakanja* or section 324A. Instead, defendant asserted the absence of duty was established by a statutory presumption applicable to public entities (Gov. Code, § 830.4), the holding in *Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187 (*Chowdhury*), and the results in *White, supra,* 25 Cal.App.4th 442 and *Paz, supra,* 22 Cal.4th 550.

For the reasons we have already discussed, *White* and *Paz* are distinguishable. Defendant's reliance on Government Code section 830.4 to provide the statutory exception to the general duty rule in Civil Code section 1714 is also unavailing.

19

Government Code section 830.4 provides in part, "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals . . . ." This provision is part of the Government Claims Act (Gov. Code, § 810 et seq.) and provides immunity to government entities under certain circumstances. It does not provide a blanket immunity to government entities under all circumstances, however. (*De La Rosa v. City of San Bernardino* (1971) 16 Cal.App.3d 739, 746 ["although a public entity is not liable for failure to install traffic signs or signals . . . , when it undertakes to do so and invites public reliance upon them, it may be held liable for creating a dangerous condition in so doing"].)

Moreover, defendant did not cite, nor have we located, any authority to extend this statutory immunity to a private entity alleged to have been negligent. To the contrary, a defendant that "is not a 'public entity' . . . is not entitled to claim the immunity set forth in the Tort Claims Act." (*Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, 1397 (*Lawson*).)

Defendant's reliance on *Chowdhury, supra,* 38 Cal.App.4th 1187 is similarly flawed. *Chowdhury* involved a vehicle collision that occurred in an intersection when traffic signals were not functioning due to a power outage. The plaintiffs successfully sued the city on the theory it failed to correct a dangerous condition of public property. The Court of Appeal reversed.

The sole defendant in *Chowdhury* was a public entity. The appellate panel first found the public property was not, by statute, in a dangerous condition (Gov. Code, § 830) and then applied the city's statutory immunity under the Government Claims Act to reverse the judgment in the plaintiffs' favor. (*Chowdhury, supra,* 38 Cal.App.4th at p. 1195.)

20

*Chowdhury* provides no assistance to defendant. As noted, the statutory immunities available to public entities do not extend to private entities that contract with them. (*Lawson, supra,* 180 Cal.App.4th at p. 1397.) More to the point, however, *Chowdhury* was resolved on the basis of statutory immunity, not the legal question of duty. As our Supreme Court held in *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, "the question of the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity." (*Id.* at pp. 201-222.)

## IV.   Conclusion

"The existence of a duty of care is a question of law decided on a case-by-case basis." (*M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 516.) Here, whether the duty question is analyzed under either *Biakanja* or section 324A criteria, defendant failed to establish as a matter of law the absence of a duty to plaintiffs. Defendant was not entitled to summary judgment.

21

## DISPOSITION

The judgment is reversed with directions to vacate the judgment in favor of defendant and enter a new order denying defendant's motion for summary judgment.  Plaintiffs are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION


DUNNING, J.*

We concur:


KRIEGLER, Acting P. J.


BAKER, J.

---

*     Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.