Filed 3/2/21  Piontkowski v. Veolia ES Industrial Services, Inc. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ROBERT PIONTKOWSKI, | B301845 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. BC636816 |
| VEOLIA ES INDUSTRIAL SERVICES, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre Hill, Judge. Affirmed.

Arnold & Itkin, Noah M. Wexler, John Benjamin Bireley; Keisel Law, Paul R. Keisel and Melanie M. Palmer for Plaintiff and Appellant.

Weinberg Wheeler Hudgins Gunn & Dial, Marjan Hajimirzaee, Kristian T. Kaskla and D. Lee Roberts, Jr. for Defendants and Respondents.

# INTRODUCTION

Plaintiff and appellant Robert Piontkowski (plaintiff), an employee of Chevron, was seriously injured on the job at the company's El Segundo refinery when he was splashed with super-heated materials. Plaintiff claims he was injured because a pipe that would normally have drained those materials in a different manner was plugged. Chevron had a services agreement with Veolia Environmental Services, Inc. to hydroblast such pipes at Chevron's direction. Plaintiff filed this negligence action against defendants and respondents Veolia ES Industrial Services, Inc., Veolia North America, LLC, and Veolia Water Technologies, Inc. (collectively, Veolia) alleging Veolia owed him a duty, as a third-party beneficiary of the services agreement, to timely respond to a request from Chevron to clean the drainpipe at issue and, further, that Veolia's failure to clean the pipe caused the condition that led to his injury.

The trial court granted Veolia ES Industrial Services, Inc.'s motion for summary judgment and plaintiff appeals from the subsequently entered judgment.[1] He asserts the trial court erred in finding that Veolia did not owe him a legal duty of care because he was not an intended third-party beneficiary of the services agreement between Veolia and Chevron. Finding no error, we affirm the judgment.

---

[1] This appeal only involves the judgment entered in favor of one of the Veolia entities, Veolia ES Industrial Services, Inc.

## 1. The Complaint

Plaintiff, a Chevron employee, was seriously injured at the company's oil refinery in El Segundo on June 1, 2016. Plaintiff subsequently received workers' compensation benefits for the injuries he sustained. Those benefits notwithstanding, plaintiff filed the current action against several defendants, including Veolia, on October 11, 2016. In the operative first amended complaint, plaintiff asserted causes of action for negligence and gross negligence against Veolia.[3] Chevron retained Veolia to provide, among other things, on-demand hydroblasting services at the El Segundo facility.

According to the operative complaint, plaintiff was performing his assigned job task and was required to drain a line on a coker unit[4] at the worksite. The line was plugged, however, and would not properly drain. In the process of performing his

---

[2] Most of the documents critical to our analysis were filed under seal in the trial court and in this court. In the interest of avoiding disclosure of any confidential information, our discussion of the facts in this case is somewhat more general than usual.

[3] Plaintiff did not oppose Veolia's motion for summary judgment and/or adjudication with respect to the gross negligence claim and does not address that claim in this appeal.

[4] Coking is a refinery process that takes place at above atmospheric pressure and at approximately 900 degrees Fahrenheit. Coke, a coal-like substance, builds up in a large drum and water is used to hydraulically cut the coke, enabling its removal from the drum. (*Today in Energy - U.S. Energy Information Administration (EIA): Coking is a refinery process that produces 19% of finished petroleum product exports* <https://www.eia.gov/todayinenergy/detail.php?id=9731> [as of Feb. 26, 2021], archived at <https://perma.cc/DT4R-7VAA>.)

assigned task, plaintiff " 'sustained serious burns and other injuries' " after " 'scalding coke and other materials were violently released from the plugged line.' "

Plaintiff also alleged that a few days prior to the accident, Chevron requested that Veolia unplug the drain line. At the time of the accident, Veolia had not yet reported to unplug the line. In response to a special interrogatory request, plaintiff contended "that [Veolia] owed a general duty of care to identify and remedy dangerous conditions—such as plugged lines or conditions which may have caused lines to easily plug—with respect to the lines and other equipment [Veolia was] responsible for cleaning, draining, and maintaining." He further stated, with respect to the alleged breach of duty, that "[o]n the day of the explosion, Plaintiff had to drain water from the lines in the coke drum to conduct his work. However, the line was plugged and would not drain. On information and belief, [Veolia is] responsible for maintaining, draining and cleaning lines, such as the one at issue in this litigation. Plaintiff contends that the plugged line on the day of the injury was caused by Veolia's negligent draining, cleaning, and/or maintenance of the line."

Veolia answered the complaint and denied the allegations.

## 2.    Summary Judgment Proceedings

Veolia ES Industrial Services, Inc. filed a motion for summary judgment and/or adjudication. With respect to the negligence claim, Veolia noted the distinction between nonfeasance, i.e., the failure to act, and misfeasance, i.e., the failure to use ordinary care in performing an act. As to nonfeasance, Veolia observed that the failure to act to prevent harm is normally actionable only where a special relationship exists between the plaintiff and the defendant. Here, Veolia

4

argued, no special relationship existed between plaintiff and Veolia as a matter of law because Veolia had been hired to perform its duties by Chevron, for Chevron's benefit. With respect to misfeasance, Veolia argued that none of the relevant factors weighed in favor of imposing liability on it—particularly foreseeability—because the company fulfilled a small role, directed by Chevron, at the worksite. The overall processes were managed, controlled, and monitored by Chevron, not Veolia.

Plaintiff, by contrast, argued that Veolia was negligent under both a nonfeasance and a misfeasance theory. As to nonfeasance, plaintiff argued that Veolia's contract with Chevron obligated Veolia to perform certain services, including clearing the plugged drain line, and that Veolia's failure to timely perform caused plaintiff's injuries. Plaintiff also contended a special relationship existed between himself and Veolia because, as a Chevron employee, he was an intended third-party beneficiary of the contract between Veolia and Chevron. With respect to misfeasance, plaintiff asserted that Veolia breached its ordinary duty of care to perform services for Chevron in a timely manner and that it was foreseeable that a Chevron employee, such as plaintiff, could be seriously injured as a result.

### 3.    The Court's Ruling and the Appeal

The court granted Veolia's motion for summary judgment. As pertinent here, the court found as a matter of law that plaintiff could not establish that Veolia owed him a legal duty of care. The court noted that plaintiff's primary allegations against Veolia rested on the company's failure to act, i.e., its failure to clear the drain line prior to the accident. And as to alleged nonfeasance, liability is typically limited to situations in which there is a special relationship between the parties that creates a

duty to act. Plaintiff alleged that the services agreement between Veolia and Chevron created such a duty, citing legal authority holding that a special relationship might exist where, for example, a contractor has an ongoing duty to maintain a property in safe condition. But after reviewing the services agreement, the court determined that Veolia was obligated to unclog the drain line at issue once monthly or upon Chevron's request—and was not tasked with maintaining the drain line in a clear state on an ongoing basis. The court concluded, therefore, that as a matter of law no special relationship existed by virtue of the services agreement which obligated Veolia to act affirmatively to prevent harm to plaintiff.[5]

The court signed the judgment in favor of Veolia on August 12, 2019. Plaintiff timely appeals.

## DISCUSSION

Although plaintiff asserted multiple theories of negligence in opposition to Veolia's motion for summary judgment, he now contends only that Veolia owed him a duty of care arising out of the company's services agreement with Chevron. Plaintiff argues that the services agreement created a special relationship between Veolia and himself and that, as a result, Veolia was required to clear plugged drain lines at the worksite in a timely fashion, for his protection. As we explain, plaintiff's theory of liability turns on whether plaintiff is an intended third-party beneficiary of the services agreement. We conclude, as the trial court did, that he is not.

---

[5] The court also addressed plaintiff's misfeasance theory of negligence. Plaintiff does not challenge that portion of the court's ruling, however.

## 1. Scope and Standard of Review

The applicable standard of review of a ruling on a motion for summary judgment is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra*, 25 Cal.4th at p. 850; Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must " 'show[ ] that one or more elements of the cause of action ... cannot be established' by the plaintiff. [Citation.]" (*Aguilar*, at p. 853.) A defendant meets its burden by presenting affirmative evidence that negates an essential element of a plaintiff's claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) Alternatively, a defendant meets its burden by submitting evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential element of its claim. (*Aguilar*, at p. 855.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz, supra*, 24 Cal.4th at p. 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler*, at p. 768.)

In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the

7

elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 629–630.) We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Id.* at p. 630.)

Finally, although we review the court's summary judgment ruling independently we are, as always, guided by the principle that " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

**2. The court properly granted Veolia's motion for summary judgment.**

### 2.1. Negligence Generally

To support a negligence cause of action, a plaintiff must plead and prove: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.) " '[T]he threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion.' "

(*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 837 (*Goonewardene*).) " 'Duty, being a question of law, is particularly amenable to resolution by summary judgment.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

Veolia's motion for summary judgment asserted that Veolia did not owe plaintiff a legal duty of care. "In considering whether a party has a legal duty in a particular factual situation, a distinction is drawn between claims of liability based upon misfeasance and those based upon nonfeasance. ' " 'Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention. ...' [Citations.]" ' [Citation.] Liability for misfeasance is based on the general duty of ordinary care to prevent others from being injured by one's conduct. [Citations.] Liability for nonfeasance is limited to situations in which there is a special relationship that creates a duty to act. [Citations.] 'The basic idea is often referred to as the "no duty to aid rule," which remains a fundamental and long-standing rule of tort law. ... "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." ' [Citation.]" (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1202–1203 (*Seo*).)

Plaintiff's negligence claim is predicated on Veolia's failure to act, i.e., its failure to clear the plugged drainpipe that he alleges caused his injury. Accordingly, to establish that Veolia

9

owed him a legal duty, plaintiff must demonstrate the existence of a special relationship between them. As plaintiff suggests, " '[a] duty [of care] may arise through statute, contract, or the relationship of the parties.' " (*Lichtman v. Siemens Industry, Inc.* (2017) 16 Cal.App.5th 914, 920, fn. omitted.) And a duty running from a defendant to a plaintiff may arise from a contract even though, as here, the parties are not in privity. (*Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*); see *Goonewardene, supra*, 6 Cal.5th at p. 838.) "Under these circumstances, the existence of a duty is not the general rule, but may be found based on public policy considerations." (*Lichtman*, at p. 921.)

### 2.2.  Duty of Care Based on Contractual Obligation

Plaintiff claims, essentially, that the services agreement evidences a special relationship because it shows that the parties intended to protect him from workplace injury. As the existence and language of the contract are undisputed and neither party has proffered disputed extrinsic evidence relating to its meaning, the proper interpretation of the contract is a question of law. (*Suarez v. Pacific Northstar Mechanical, Inc.* (2009) 180 Cal.App.4th 430, 439.)

Veolia acknowledges that a special relationship may, in some cases, arise out of a contract in which a company undertakes repairs. That is not the precise situation here, but it is similar in several respects. *Seo, supra,* relied on by plaintiff below, provides relevant guidance. There, the plaintiff was injured after his arm was caught in a garage gate as it closed. The plaintiff contended the gate was defectively designed and, in addition to suing the property owner, he sued the garage gate repairer for negligence because the repairer failed to advise the property owner of the defect. (*Seo, supra,* 97 Cal.App.4th at

10

pp. 1198–1199.) The repairer moved for summary judgment, arguing it had no duty to the plaintiff to advise the property owner about the defect. (*Id.* at p. 1200.) The court of appeal agreed.

Importantly for our purposes, the court distinguished between an ongoing, affirmative obligation to maintain property in a safe and working condition and an obligation to provide repair services as needed and requested. Specifically, the court noted that "[a] special relationship may arise out of a contract in which a repair company agrees for a fee to keep a piece of equipment in repair, perform all work necessary for the safety and maintenance of the equipment, and make periodic inspections of the equipment." (*Seo, supra,* 97 Cal.App.4th at p. 1204.) But where a contractor provides repair services on demand, no such relationship with third parties is created. (*Ibid.*) In the case at hand, it was evident that "the owner of the property called defendant gate repair company on those occasions the gate or some other similar equipment needed specific repairs." (*Ibid.*) Accordingly, the court concluded, the repair company had no legal duty to plaintiff to advise the property owner of the gate's defect.

The distinction drawn in *Seo* is applicable here. Stated simply,[6] Chevron hired Veolia to clean equipment at several of its work sites. The services agreement states that Veolia is an independent contractor and that its services, including the hydroblasting services plaintiff contends should have been

---

[6] As noted, many of the materials relevant to our analysis, including the services contract, were filed under seal. We have reviewed the agreement in detail but provide only a general summary in this opinion.

11

performed prior to the accident, are to be provided on demand, and as requested in writing by Chevron. Further, the location and extent of all services provided by Veolia are to be identified by Chevron. Veolia's compensation is based on the labor, material, equipment, and other costs directly associated with each of Chevron's assignments. The agreement also notes that Chevron would closely monitor Veolia's work and provide sufficient notice to Veolia of upcoming projects and services required. In sum, Chevron would instruct Veolia what hydroblasting services it needed and would also direct Veolia when, where, and how to provide those services. Chevron plainly did not task Veolia with an ongoing duty to ensure the safety of its workers, as plaintiff suggests.

The specific contractual provisions identified by plaintiff do not change our analysis. As plaintiff notes, the services agreement contains several provisions relating to workplace safety, including requirements that Veolia's employees be subjected to drug, alcohol and search policies before entering a Chevron worksite, that Veolia employees are responsible for or are required to participate in certain aspects of job site safety, and that Veolia was required to provide a safety orientation to its employees at its own expense. Also, plaintiff observes, Veolia warrantied its services "in a manner reasonably believed to be in the best interest of Chevron and with such care as a reasonably prudent provider of similar services would use under similar circumstances." These provisions, plaintiff claims, constitute "substantial evidence that Chevron employed Veolia to protect its employees from the dangers of a coke fallout, which are increased when draining the drums through the Delta Valve … ."

12

Having reviewed the entire contract, as well as the handful of safety-related provisions highlighted by plaintiff, we conclude that the services agreement was not intended to benefit Chevron's employees nor was it focused on providing a safe work environment for them. Rather, it is plain from the agreement that Veolia's services were intended to benefit Chevron by keeping its refineries and equipment operating smoothly. The fact that Veolia was required to undertake some safety tasks due to the requirements of the worksite does not convert the services agreement into an employee-safety-focused contract. And as we now explain, relevant policy considerations support our conclusion.

### 2.3. Policy considerations regarding the imposition of tort liability

In *Biakanja,* our Supreme Court identified multiple factors that may support a court's conclusion that a duty of care to a noncontracting party may arise from a contract:

"The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Biakanja, supra,* 49 Cal.2d at p. 650.)

Our Supreme Court applied these and other policy-related factors recently, in *Goonewardene, supra.* There, an employer contracted with a company to provide payroll services. A former

13

employee sued her employer under a variety of theories relating to the employer's failure to pay wages due. (*Goonewardene, supra,* 6 Cal.5th at p. 822.) The Court considered, as pertinent here, whether the employee could also sue the payroll company for lost wages. The plaintiff asserted the payroll company breached the oral payroll services contract with her employer and she was entitled to enforce the contract as a third-party beneficiary. She also claimed the payroll company negligently performed its contract with the employer and, as a third-party beneficiary of the contract, she was entitled to recover from the company in tort as well. (*Id.* at p. 825.)

The Court rejected both arguments. First, the Court addressed plaintiff's contention that she could assert a breach of contract action against the payroll company. (*Goonewardene, supra,* 6 Cal.5th at pp. 826–837.) Summarizing its prior cases relating to contract enforcement by third-party beneficiaries, the Court explained that in addition to examining the plain language of the contract, courts must consider three additional factors: "(1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. All three elements must be satisfied to permit the third party action to go forward." (*Id.* at p. 830.) With respect to the second element, the Court clarified that "the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract." (*Ibid.*) And as to the third

14

element, the Court explained that it "calls for a judgment regarding the potential effect that permitting third party enforcement would have on the parties' contracting goals, rather than a determination whether the parties actually anticipated third party enforcement at the time the contract was entered into." (*Id.* at p. 831.)

The Court concluded the plaintiff was not a third-party beneficiary of the contract between her employer and the payroll company. Because no written contract existed, the Court turned directly to an examination of the three factors just described. Assuming without deciding that the plaintiff would have benefited from her employer's use of a payroll company, the Court noted that an incidental benefit to an employee was insufficient to establish that the employee was a third-party beneficiary of a contract. Instead, the court stated, "a motivating purpose of the contracting parties must be to provide such a benefit to employees." (*Goonewardene, supra,* 6 Cal.5th at p. 835.) With respect to an employer's use of a payroll company, the Court concluded that "the relevant motivating purpose is to provide a benefit *to the employer*, with regard to the cost and efficiency of the tasks performed and the avoidance of potential [statutory] penalties." (*Ibid.*) Moreover, even if it could be said that a motivating purpose of the contract was to provide the employees a benefit, "it still may be inconsistent with the objectives of the contract and the reasonable expectations of the contracting parties to permit the employees to sue the payroll company for an alleged breach of the contract." (*Id.* at p. 836.) The court examined several factors, including the employer's availability to enforce the contract and the substantial additional costs that would result from payroll company liability to employees for

15

wages, and concluded that permitting employees to sue a payroll company for wage and hour violations would generally not be consistent with the reasonable expectations of an employer and a payroll company. (*Ibid*.)

Moving to the employee's negligence claim against the payroll company, the court examined the *Biakanja* factors to determine whether the employee could sue the payroll company for damages arising from its negligent contract performance. In concluding the payroll company did not owe the plaintiff a legal duty of care arising from the contract, the Court considered a variety of policy considerations. First, even if an employee sustained a loss of wages due to the payroll company's negligence, California's wage and hour laws already provide the employee with "a full and complete remedy" against the employer. Accordingly, the Court saw the imposition of a separate tort duty of care as "generally unnecessary to adequately protect the employee's interest." (*Goonewardene, supra,* 6 Cal.5th at p. 839.) Second, deterrence was not a significant factor because the payroll company was already obligated to the employer to perform its services with due care. (*Ibid*.) Third, and as the Court explained in its breach of contract analysis, the payroll company had no special relationship with the plaintiff that would warrant the recognition of a contractually-based duty of care. And "[g]iven this conclusion, it would clearly be anomalous to impose tort liability, with its increased potential damages, upon the payroll company based upon its alleged failure to perform its obligations under its contract with [the] plaintiff's employer." (*Id*. at p. 840.) Fourth, the Court noted that the imposition of a duty of care to employees could improperly distort a payroll company's performance of its

16

contract with an employer—essentially, the Court concluded the payroll company could not, in some circumstances, serve both masters. (*Ibid*.) Finally, the court indicated that "imposition of a tort duty of care on a payroll company is likely to add an unnecessary and potentially burdensome complication to California's increasing volume of wage and hour litigation." (*Id*. at p. 841.) Because employees are already fully protected under existing law, the Court concluded, the possible benefit of expanded liability would be substantially outweighed by the significant burden on the judicial system resulting from increased and complicated litigation. (*Ibid*.)

Although plaintiff cites *Biakanja*, he does not discuss the factors identified in that opinion. Nor does he conduct the sort of analysis undertaken by the Court in *Goonewardene*. We discuss the pertinent factors briefly, following the rubric used by the Court in *Goonewardene*.

First, to the extent an employee is injured in the workplace, California's workers' compensation laws provide the employee with "a full and complete remedy" against the employer. Accordingly, and as in *Goonewardene*, the imposition of a separate tort duty of care here is unnecessary to adequately protect the employee's interest. Second, deterrence is not a significant factor in the present case because Veolia is already obligated to Chevron to perform its services with due care. Third, and as explained *ante*, Veolia had no special relationship with plaintiff that would warrant the recognition of a contractually-based duty of care. And therefore, like *Goonewardene*, "it would clearly be anomalous to impose tort liability, with its increased potential damages [citation], … based upon [Veolia's] alleged failure to perform its obligations under its contract with"

17

Chevron. (*Goonewardene, supra*, 6 Cal.5th at p. 840.) Finally, and again similar to *Goonewardene*, the imposition of a tort duty of care in this circumstance is likely to foster litigation by plaintiffs seeking to avoid the workers' compensation bargain. As the Court has said, because employees are already fully protected under existing law, the possible benefit of expanded liability would be substantially outweighed by the significant burden on the judicial system resulting from increased and complicated litigation.

In sum, we conclude that plaintiff cannot maintain a negligence action against Veolia because he is not an intended beneficiary of the services agreement. As a matter of law, therefore, no special relationship existed which imposed upon Veolia an affirmative duty to act to protect plaintiff in the circumstances presented.

## DISPOSITION

The judgment is affirmed. Veolia ES Industrial Services, Inc. shall recover its costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                              LAVIN, J.

WE CONCUR:


        EDMON, P. J.


        EGERTON, J.