Filed 6/27/23  Piontkowski v. Fluor Enterprises CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ROBERT PIONTKOWSKI, | B311457 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. BC636816 |
| FLUOR ENTERPRISES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre Hill, Judge. Affirmed.

Arnold & Itkin, Andrew R. Gould, Brian M. Christensen; Niddrie Addams Fuller Singh and Rupa G. Singh for Plaintiff and Appellant.

Berkes Crane Santana & Spangler, Carmen Santana, Robert H. Berkes, Steven M. Crane, and Barbara S. Hodus for Defendant and Respondent.

# INTRODUCTION

Plaintiff and appellant Robert Piontkowski (plaintiff), an employee of Chevron, was seriously injured on the job at the company's El Segundo refinery when he was splashed with super-heated materials generated during the coking process.[1] Plaintiff alleges he was injured because a pipe that would normally have funneled coke and other materials from the coke drum to the coke pit was plugged. As a result, the super-heated materials did not properly flow from the drum through a valve and chute in the area where plaintiff was working. Instead, the materials backed up and were violently released through a gap between the concrete deck and the valve and chute. Plaintiff was hit and suffered severe burns and other injuries.

Plaintiff sued a number of defendants, including defendant and respondent Fluor Enterprises, Inc. (Fluor), asserting claims including negligence. Several years before the accident, Chevron had hired Fluor to design, engineer, and oversee a large construction project that included the installation of new coke drums at the refinery. Plaintiff alleges that based upon the contract between Chevron and Fluor, Fluor owed him a duty to redesign the equipment used in the coke draining process and its configuration in relation to the concrete deck in a manner that

---

[1] Coking is a refinery process that takes place at above atmospheric pressure and at approximately 900 degrees Fahrenheit. Coke, a coal-like substance, builds up in a large drum and water is used to hydraulically cut the coke, enabling its removal from the drum. (*Today in Energy - U.S. Energy Information Administration (EIA): Coking is a refinery process that produces 19% of finished petroleum product exports* <https://www.eia.gov/todayinenergy/detail.php?id=9731> [as of June 23, 2023], archived at < https://perma.cc/89BD-97VW>.)

would have eliminated the risk that super-heated materials could be discharged onto the deck where he was injured. According to plaintiff, Fluor's failure to undertake that work resulted in the condition that led to his injury.

The trial court granted Fluor's motion for summary judgment and plaintiff appeals from the subsequently entered judgment. He asserts the court erred in finding that Fluor did not owe him a legal duty of care because his injury was foreseeable and a close connection exists between his injury and Fluor's conduct. The court's conclusion is correct. Plaintiff also asserts, for the first time on appeal, that Fluor could be liable on a negligent undertaking theory. Plaintiff forfeited this issue by failing to raise it in opposition to the motion for summary judgment. We also reject plaintiff's contention that the court improperly excluded his expert's declaration. Accordingly, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

### 1.     The Operative Complaint

Plaintiff, a Chevron employee, was seriously injured at the company's oil refinery in El Segundo on June 1, 2016. Plaintiff subsequently received workers' compensation benefits for the injuries he sustained. Those benefits notwithstanding, plaintiff filed the current action against multiple defendants on October 11, 2016. In the operative first amended complaint, plaintiff asserts causes of action for negligence, gross negligence, design defect, manufacturing defect, marketing defect, and breach of implied warranty.[2] Plaintiff subsequently filed a Doe

---

[2] Only the cause of action for negligence is at issue in this appeal.

amendment naming Fluor as a defendant. Chevron retained Fluor in 2011 to provide engineering, procurement, contracting, and project management support for the removal and replacement of the cutting deck and derrick structure in one lift, the replacement of all six coke drums through the top of the existing coke drum structure, reinforcement of coke chutes, and installation of a new driller's shelter. Fluor provided construction management support during the construction phase. The project was completed in 2014.

According to the operative complaint, plaintiff was performing his assigned job task and was required to drain a line on a coker unit at the worksite. The line was plugged, however, and would not properly drain. In the process of performing his assigned task, plaintiff " 'sustained serious burns and other injuries' " after " 'scalding coke and other materials were violently released from the plugged line.' " Plaintiff also generally alleged that the coker unit was defective and that the defendants designed, manufactured, constructed, and/or marketed the defective coker unit. With respect to the negligence claim, and as pertinent here, plaintiff alleged that the defendants failed to "properly and safely perform duties which Defendants agreed to undertake or perform" and failed "to identify and remedy a dangerous condition," thereby causing plaintiff's injuries.

Fluor answered the complaint and denied the allegations.

## 2.     Summary Judgment Proceedings

In May 2020, Fluor filed a motion for summary judgment or summary adjudication as to all plaintiff's causes of action. Fluor noted that Chevron's post-accident investigation identified three causal factors that led to the accident, none of which related to Fluor's work for Chevron. First, coker unit drain lines were

plugging, which required coker operators such as plaintiff to drain the coke drums through the bottom Delta valves. Fluor was not involved in the original design of the coker units and did not design, remove, disconnect, or reconnect the drain lines as part of the coke drum project. Second, plaintiff was on the 23-foot concrete deck, in the immediate vicinity of the open Delta valves. At the time of his injury, plaintiff was inserting a locking pin on the Delta valve to ensure the valve did not close while the coke drum was draining. This operating practice was instituted by Chevron and was both unchanged by and unrelated to the coke drum project. Third, the material and condition of the deck around the coke chutes had degraded over time, creating a gap that allowed coke and water to release onto the 23-foot deck during coke fall-out situations. The gap was not caused by the coke drum project. Chevron had implemented a mitigation design prior to the accident but had not yet completed that work in the area where plaintiff was injured.

Plaintiff opposed the motion. He argued that Fluor had a "duty to exercise ordinary care in designing, engineering, and constructing the replacement coke drums, coke chutes, drain lines, and other necessary components over a four-year, multi-million dollar" coke drum project. Further, plaintiff asserted that "Fluor breached its duties by failing to design and install non-plug drain lines and to resolve a gap between the Delta Valve at the bottom of the coke drum and the floor of the 23' deck to prevent foreseeable injury to Chevron operators like Plaintiff from 'coke fallout,' proximately causing Plaintiff's injuries." Plaintiff argued that the contract between Chevron and Fluor relating to the coke drum project (services agreement) required Fluor to perform engineering and design services, keeping in

5

mind the safety of the workers that would ultimately perform the coking process. In addition, plaintiff urged that Fluor had done a substantial amount of work on and around the 23-foot deck, the Delta valve, the coke drum chute, and related piping systems. According to plaintiff, Fluor's design and engineering caused a dangerous condition for operators because the coke drum was prone to clogging, which required coke operators to go to the 23-foot deck to work on the Delta valve, the coker chute was an open design (i.e., a slide not a tube), and there was a gap between the Delta valve and coke chute and the 23-foot concrete deck, through which fallout could reach operators working on the Delta valve. Plaintiff offered an expert declaration by mechanical engineer Gregg Perkin supporting the opposition.

In reply, Fluor objected to Perkin's declaration in its entirety and to certain opinions in particular on a variety of grounds, including that his opinions were speculative and lacked foundation. Moreover, Fluor contended, its work for Chevron under the services agreement "did not include the re-design of the coker unit, the 23' deck, the Delta valves, the drain lines or the operations practice that required Plaintiff [to] be present on the 23' deck which caused his injury." Fluor also emphasized that plaintiff was not a third-party beneficiary of the services agreement and therefore his negligence claim failed as a matter of law.

### 3. Court's Ruling, Entry of Judgment, and Appeal

The court heard Fluor's motion in December 2020. As an initial matter, the court sustained all of Fluor's objections to the Perkin declaration, noting that expert opinions must not be " 'speculative, based on unconventional matters, or grounded in unsupported reasoning.' " Further, and with respect to the cause

6

of action for negligence, the court noted that Chevron identified and remedied three issues that caused plaintiff's injury and Fluor's evidence indicated that none of the three issues related to Fluor's work on the coke drum project. This evidence shifted the burden to plaintiff to show the existence of a triable issue of material fact. The court rejected plaintiff's argument that Fluor owed him a duty of care due to a special relationship arising from the services agreement between Fluor and Chevron. Among other things, the court noted that the services agreement contained a specific provision that the agreement was not intended to benefit any unnamed third parties.

The court granted Fluor's motion and entered judgment accordingly. Plaintiff timely appeals.

## DISCUSSION

### 1. The court did not err by excluding plaintiff's expert's declaration.

Plaintiff contends the court erred in excluding his expert's declaration in its entirety. Specifically, plaintiff argues the court failed to apply the proper legal standard when it made its ruling. We disagree.

#### 1.1. Standard of Review

"Except to the extent the trial court bases its ruling on a conclusion of law (which we review de novo), we review its ruling excluding or admitting expert testimony for abuse of discretion." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).)

### 1.2. Analysis

In the context of summary judgment, " '[s]upporting and opposing affidavits or declarations … shall set forth admissible evidence.' (Code Civ. Proc., § 437c, subd. (d).) 'Matters which would be excluded under the rules of evidence if proffered by a witness in a trial as hearsay, conclusions or impermissible opinions, must be disregarded in supporting affidavits.' [Citation.]" (*LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946.) "An expert may testify to an opinion '[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' (Evid. Code, § 801, subd. (a).) 'Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact.' (Evid. Code, § 805.) However, an expert is not permitted to give an opinion on questions of law or legal conclusions. (*Issakhani v. Shadow Glen Homeowners Assn., Inc.* (2021) 63 Cal.App.5th 917, 934 ['meaning and purpose of a legislative enactment is a question of law for the court; an expert's opinion on such matters is an inadmissible legal conclusion']; *Palmieri v. State Personnel Bd.* (2018) 28 Cal.App.5th 845, 860 ['the effect of California statutes presents purely legal questions outside the province of expert witnesses']; *People v. Jo* (2017) 15 Cal.App.5th 1128, 1176 [expert opinion on question of law inadmissible]; *Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841 [expert may not 'testify to legal conclusions in the guise of expert opinion'].) It is the role of the judge to decide purely legal issues. (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1182.)" (*City of Rocklin v. Legacy Family Adventures-Rocklin, LLC* (2022) 86 Cal.App.5th 713, 728–729.)

8

According to Perkin's curriculum vitae, he is a mechanical engineer with over 50 years of experience in mechanical equipment and mechanical systems design. His expert declaration, however, does not focus on matters related to mechanical engineering. His central opinions include, for example, that Fluor "was under a duty to discover and should have discovered the Gap-Hazard while evaluating, designing, and engineering" the coke drum project, and that "[d]iscovering and remedying any dangerous condition on the 23' deck or the Coker Unit is within Fluor's Scope of Work ("SOW") on the Project." These opinions, and other opinions contained in his declaration, were properly excluded by the court because they impermissibly invade the court's role to decide issues of law. (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770 ["Duty is a question of law for the court, to be reviewed de novo on appeal."]; *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 [interpretation of a contract is a question of law "when it is based on the words of the instrument alone, when there is no conflict in the extrinsic evidence, or when a determination was made based on incompetent evidence"]; and see *Kim v. TWA Construction, Inc.* (2022) 78 Cal.App.5th 808, 834 [determining the scope of work under a construction contract requires contract interpretation]; *In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 51 [" '[E]xpert opinion on contract interpretation is usually inadmissible.' "].)

Citing *Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, plaintiff argues that the court was required to " 'liberally construe the evidence in favor of the party opposing' the summary judgment motion when ruling on the evidence's admissibility." There, the court of appeal considered the adequacy

9

of an expert witness's foundation for a proffered opinion. The court noted that " '[i]n light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial.' " (*Id*. at p. 524.) According to plaintiff, the court should have taken a more relaxed approach in its analysis of the foundation of Perkin's opinions and admitted his declaration. We disagree for two reasons. First, Perkin is a mechanical engineer but as already explained, his opinions largely (and improperly) relate to the interpretation of the services agreement between Chevron and Fluor. Second, and in any event, the record does not indicate that Perkin reviewed the services agreement. Thus, even if it would be appropriate for Perkin to comment on the scope of work encompassed by the services agreement, any opinion on that point would lack the proper foundation. (*Sargon, supra*, 55 Cal.4th at p. 776 [court does not abuse its discretion by excluding expert testimony that is not " '[b]ased on matter … that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates … .' "]; Evid. Code, § 801, subd. (b).)

In sum, the court did not abuse its discretion in excluding plaintiff's expert's declaration.

## 2. The court properly granted Fluor's motion for summary judgment.

Plaintiff also claims the court erred by granting Fluor's motion for summary judgment because he established that Fluor owed him a duty of care. As he discusses only the court's ruling on his negligence claim, plaintiff has forfeited any challenge to

10

the judgment in favor of Fluor on his other five causes of action. We therefore limit our analysis to the cause of action for negligence.

### 2.1. Standard of Review

The standard of review is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850; Code Civ. Proc., § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler*, at p. 768.) "In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the

11

opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid*.)

The appellant has the burden to show error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) Further, "an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867.) Matters not properly raised or that lack adequate legal discussion will be deemed forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)

### 2.2. Negligence

To support a negligence cause of action, a plaintiff must plead and prove: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach was a proximate or legal cause of the plaintiff's injuries. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.) " '[T]he threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion.' " (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 837 (*Goonewardene*).) " 'Duty, being a question of law, is particularly amenable to resolution by summary judgment.' " (*Regents of*

*University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

Fluor's motion for summary judgment asserts that plaintiff's negligence claim fails as a matter of law because Fluor did not owe plaintiff a legal duty of care and, in the alternative, that nothing it did or did not do caused plaintiff's injury. We address the issue of duty first and find it dispositive.

"In considering whether a party has a legal duty in a particular factual situation, a distinction is drawn between claims of liability based upon misfeasance and those based upon nonfeasance. ' " 'Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention. ...' [Citations.]" ' [Citation.] Liability for misfeasance is based on the general duty of ordinary care to prevent others from being injured by one's conduct. [Citations.] Liability for nonfeasance is limited to situations in which there is a special relationship that creates a duty to act. [Citations.] 'The basic idea is often referred to as the "no duty to aid rule," which remains a fundamental and long-standing rule of tort law. ... "As a rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." ' [Citation.]" (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1202–1203.)[3]

---

[3] Recently, however, the California Supreme Court noted that the distinction between misfeasance and nonfeasance is "imprecise and prone to misinterpretation." (*Brown v. USA Taekwondo* (2021)

Plaintiff's negligence claim is predicated on his contention that his injury was foreseeable and a close connection existed between his injury and Fluor's conduct. Accordingly, plaintiff asks us to recognize that Fluor owed him a legal duty under the factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*). " 'A duty [of care] may arise through statute, contract, or the relationship of the parties.' " (*Lichtman v. Siemens Industry Inc.* (2017) 16 Cal.App.5th 914, 920, fn. omitted.) And a duty running from a defendant to a plaintiff may arise from a contract even though, as here, the parties are not in privity. (*Biakanja*, at p. 650; see *Goonewardene, supra*, 6 Cal.5th at p. 838.) "Under these circumstances, the existence of a duty is not the general rule, but may be found based on public policy considerations." (*Lichtman*, at p. 921.)

In *Biakanja*, our Supreme Court identified multiple factors that may support a court's conclusion that a duty of care to a noncontracting party may arise from a contract: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy

---

11 Cal.5th 204, 215, fn. 6.) " 'The proper question is not whether an actor's failure to exercise reasonable care entails the commission or omission of a specific act.' (Rest.3d Torts, [Liability for Physical and Emotional Harm (2012)] § 37, com. c, p. 3.) Rather, it is 'whether the actor's entire conduct created a risk of harm.' " (*Ibid*.)

of preventing future harm." (*Biakanja, supra*, 49 Cal.2d at p. 650.)

Our Supreme Court applied these and other policy-related factors recently, in *Goonewardene*. There, an employer contracted with a company to provide payroll services. A former employee sued her employer under a variety of theories relating to the employer's failure to pay wages due. (*Goonewardene, supra*, 6 Cal.5th at p. 822.) The court considered, as pertinent here, whether the employee could also sue the payroll company for lost wages. The plaintiff asserted the payroll company breached the oral payroll services contract with her employer and she was entitled to enforce the contract as a third-party beneficiary. She also claimed the payroll company negligently performed its contract with the employer and, as a third-party beneficiary of the contract, she was entitled to recover from the company in tort as well. (*Id*. at p. 825.)

The court rejected both arguments. First, the court addressed the plaintiff's contention that she could assert a breach of contract action against the payroll company. (*Goonewardene, supra*, 6 Cal.5th at pp. 826–837.) Summarizing its prior cases relating to contract enforcement by third-party beneficiaries, the court explained that in addition to examining the plain language of the contract, courts must consider three additional factors: "(1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. All three elements must be satisfied to

permit the third party action to go forward." (*Id*. at p. 830.) With respect to the second element, the court clarified that "the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract." (*Ibid*.) And as to the third element, the court explained that it "calls for a judgment regarding the potential effect that permitting third party enforcement would have on the parties' contracting goals, rather than a determination whether the parties actually anticipated third party enforcement at the time the contract was entered into." (*Id*. at p. 831.)

The court concluded the plaintiff was not a third-party beneficiary of the contract between her employer and the payroll company. Because no written contract existed, the court turned directly to an examination of the three factors just described. Assuming without deciding that the plaintiff would have benefited from her employer's use of a payroll company, the court noted that an incidental benefit to an employee was insufficient to establish that the employee was a third-party beneficiary of a contract. Instead, the court stated, "a motivating purpose of the contracting parties must be to provide such a benefit to employees." (*Goonewardene, supra*, 6 Cal.5th at p. 835.) With respect to an employer's use of a payroll company, the court concluded that "the relevant motivating purpose is to provide a benefit *to the employer*, with regard to the cost and efficiency of the tasks performed and the avoidance of potential [statutory] penalties." (*Ibid*.) Moreover, even if it could be said that a motivating purpose of the contract was to provide the employees a benefit, "it still may be inconsistent with the objectives of the contract and the reasonable expectations of the contracting

16

parties to permit the employees to sue the payroll company for an alleged breach of the contract." (*Id*. at p. 836.) The court examined several factors, including the employer's availability to enforce the contract and the substantial additional costs that would result from payroll company liability to employees for wages, and concluded that permitting employees to sue a payroll company for wage and hour violations would generally not be consistent with the reasonable expectations of an employer and a payroll company. (*Ibid*.)

Moving to the employee's negligence claim against the payroll company, the court examined the *Biakanja* factors to determine whether the employee could sue the payroll company for damages arising from its negligent contract performance. In concluding the payroll company did not owe the plaintiff a legal duty of care arising from the contract, the court considered a variety of policy considerations. First, even if an employee sustained a loss of wages due to the payroll company's negligence, California's wage and hour laws already provide the employee with "a full and complete remedy" against the employer. Accordingly, the court saw the imposition of a separate tort duty of care as "generally unnecessary to adequately protect the employee's interest." (*Goonewardene, supra*, 6 Cal.5th at p. 839.) Second, deterrence was not a significant factor because the payroll company was already obligated to the employer to perform its services with due care. (*Ibid*.) Third, and as the court explained in its breach of contract analysis, the payroll company had no special relationship with the plaintiff that would warrant the recognition of a contractually-based duty of care. And "[g]iven this conclusion, it would clearly be anomalous to impose tort liability, with its increased potential damages, upon the payroll

17

company based upon its alleged failure to perform its obligations under its contract with [the] plaintiff's employer." (*Id*. at p. 840.) Fourth, the court noted that the imposition of a duty of care to employees could improperly distort a payroll company's performance of its contract with an employer—essentially, the court concluded the payroll company could not, in some circumstances, serve both masters. (*Ibid*.) Finally, the court indicated that "imposition of a tort duty of care on a payroll company is likely to add an unnecessary and potentially burdensome complication to California's increasing volume of wage and hour litigation." (*Id*. at p. 841.) Because employees are already fully protected under existing law, the court concluded, the possible benefit of expanded liability would be substantially outweighed by the significant burden on the judicial system resulting from increased and complicated litigation. (*Ibid*.)

Plaintiff does not expressly argue that he is a third-party beneficiary of the services agreement and instead relies solely on the policy factors set forth in *Biakanja*.[4] Because we conclude those factors do not support plaintiff's claim, we will not engage in a detailed analysis of the services agreement except to note that the services agreement does not suggest that the coke drum project was intended to benefit Chevron's employees. Instead, the project was intended to benefit Chevron by increasing the efficiency and reliability of operations at the refinery. (*Goonewardene, supra*, 6 Cal.5th at p. 830 [noting that "the contracting parties must have a motivating purpose to benefit the

---

[4] Plaintiff asserts, without any meaningful analysis, that his "injuries arose directly from Fluor's negligent performance" of its agreement with Chevron.

18

third party, and not simply knowledge that a benefit to the third party may follow from the contract."].)

Moving to the policy factors identified in *Biakanja*, we follow the rubric used by the court in *Goonewardene*. First, to the extent an employee is injured in the workplace, California's workers' compensation laws provide the employee with a full and complete remedy against the employer. Accordingly, and as in *Goonewardene*, the imposition of a separate tort duty of care here is unnecessary to adequately protect the employee's interest. Second, deterrence is not a significant factor in the present case because Fluor was obligated to Chevron to perform its services with due care under the services agreement. Third, and as noted above, Fluor had no special relationship with plaintiff that would warrant the recognition of a contractually-based duty of care. And therefore, like *Goonewardene*, "it would clearly be anomalous to impose tort liability, with its increased potential damages [citation], … based upon [Fluor's] alleged failure to perform its obligations under its contract with" Chevron. (*Goonewardene, supra*, 6 Cal.5th at p. 840.) Finally, and again similar to *Goonewardene*, the imposition of a tort duty of care in this circumstance is likely to foster litigation by plaintiffs seeking to avoid the workers' compensation bargain. As the court has said, because employees are already fully protected under existing law, the possible benefit of expanded liability would be substantially outweighed by the significant burden on the judicial system resulting from increased and complicated litigation.

Plaintiff relies on *Beacon Residential Community Assn v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, a case in which the court applied the *Biakanja* factors. There, the high court held that an "architect owes a duty of care to future

19

homeowners in the design of a residential building where … the architect is a *principal architect* on the project—that is, the architect, in providing professional design services, is not subordinate to other design professionals. The duty of care extends to such architects even when they do not actually build the project or exercise ultimate control over construction." (*Id*. at p. 571.) Plaintiff's reliance on this case is misplaced. In *Beacon*, unlike here, the defendants' primary role in the design of the project bore a close connection to the injury alleged by the plaintiff. (*Id*. at p. 581.) That is, unlike in *Beacon*, the connection between Fluor's work under the services agreement and plaintiff's injury is not "direct and immediate." (*Ibid*.) Moreover, much of the court's analysis focused on the foreseeability of injury to the plaintiff homeowners due to the architects' negligent design of their homes. That situation is unlike the circumstance here, which involves construction at an oil refinery rather than residential units.

In sum, we conclude that plaintiff cannot maintain a negligence action against Fluor because it did not owe him a duty of care.[5]

---

[5] Relying heavily upon the Restatement of Torts, plaintiff also asserts that Fluor may be liable on a negligent undertaking theory. We decline to consider this argument because plaintiff did not raise it in opposition to the motion for summary judgment. (See *LAOSD Asbestos Cases, supra*, 87 Cal.App.5th at p. 955 [noting theories that were not fully developed or factually presented to the trial court cannot create a triable issue on appeal].)

## DISPOSITION

The judgment is affirmed. Fluor Enterprises, Inc., shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.